UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 21-cv-80589-ALTMAN/Matthewman

JANE DOE,

      Plaintiff,

v.

DARREN K. INDYKE and RICHARD D.
KAHN, as Co-Executors of the ESTATE OF
JEFFREY E. EPSTEIN,

      Defendants.

_____/

<span style="color:red">REDACTED</span>

## DEFENDANTS' MOTION TO DISMISS COMPLAINT FOR FRAUD UPON THE COURT, SPOLIATION OF EVIDENCE, AND FAILURE TO STATE A CLAIM; MOTION TO STRIKE PUNITIVE DAMAGES; AND MEMORANDUM OF LAW IN SUPPORT[1]

Scott J. Link (FBN 602991)
Kara Rockenbach Link (FBN 004493)
Link & Rockenbach, PA
1555 Palm Beach Lakes Blvd., Suite 930
West Palm Beach, FL 33401
(561) 847-4408; (561) 855-2891 [fax]
scott@linkrocklaw.com
kara@linkrocklaw.com
*Counsel for Defendants*

Bennet J. Moskowitz, *Pro Hac Vice*
Molly S. DiRago, *Pro Hac Vice*
Troutman Pepper Hamilton Sanders LLP
875 Third Avenue
New York, NY 10022
(212) 704-6087
bennet.moskowitz@troutman.com
molly.dirago@troutman.com
*Counsel for Defendants*

---

[1] Pursuant to the Court's December 13, 2021, Order (D.E. 60), Defendants have combined their pending Motions to Dismiss (D.E. 32, 39, 54) into one comprehensive filing. Plaintiff's response deadline will be established by the Court if the case is reopened.

**TABLE OF CONTENTS**

Preliminary Statement ...................................................................................................1

Introduction ...................................................................................................................2

    A.    Plaintiff has Committed Fraud Upon the Court and Destroyed Evidence ......................2

    B.    Plaintiff's Complaint is Time-Barred ..........................................................5

Plaintiff's Fraud Upon the Court, Spoliation of Evidence, and Time-Barred Claims ...................5

    A.    Plaintiff's Complaint ..........................................................................5

    B.    Plaintiff Cannot Overcome the Time-Barred Nature of Her Claims ..............................7

    C.    Plaintiff Committed Perjury About Travel and Medical Treatment in 2008 ..................8

    D.    Plaintiff Destroyed Critical, Case-Ending Evidence ...................................12

    E.    Plaintiff Committed Perjury About Being a Security Guard, Which ..........................13
         is Directly Relevant to Her Allegations

    F.    Evidence Contradicts Plaintiff's Alleged Timeline of Events .....................................14

        i.    Epstein's Investigation and Arrest ..................................................14

        ii.    Maxwell Had Minimum Contacts With Epstein During ..........................14
            the Time of the Alleged Events

        iii.    Epstein Had Minimum Contacts in Florida at the Time of the..........................15
            Alleged Events

        iv.    The Motorcycle and Towel Closet ..................................................16

    G.    Plaintiff's Credibility ..........................................................................17

Argument and Memorandum of Law .........................................................................17

    I.    This Court Posses Inherent Authority to Dismiss this Action With .............................17
        Prejudice for Fraud on the Court

        A.    Clear and Convincing Evidence Demonstrates that Plaintiff..........................18
            Consciously Committed Fraud on this Court

B. Plaintiff's Complaint is a Sham Because the Allegations are .............................20
  Palpably or Inherently False, a Plain Fiction

II. Dismissal With Prejudice is Further Supported by Plaintiff's Intentional ...................22
 Spoliation of Evidence

III. Rule 12(b)(6) – Dismissal is Required Based on Plaintiff's Failure ............................24
 to State a Claim Upon Which Relief May be Granted

  A. Plaintiff's Original Jurisdiction Claims are Time-Barred......................................24
   Under the Federal TVPA's Ten-Year Statute of Limitations

  B. Plaintiff's Supplemental Jurisdiction State Common Law Claims ......................26
   are Time-Barred Under the State of Florida's Four-Year
   Statute of Limitations

  C. Plaintiff Fails to Meet Her Burden to Sufficiently Allege – and .........................29
   Indeed Makes Allegations Which Contradict – the Extraordinary
   Circumstances Required for Invocation of Equitable Tolling and Estoppel

   i. Equitable Estoppel Fails Due to a Lack of Reasonable Reliance ..................29

   ii. Equitable Tolling Fails Due to a Lack of Due Diligence ..............................31

  D. Plaintiff Fails to Meet Her Burden to Sufficiently Allege .....................................37
   Reasonable Diligence in Pursuing Her Claims

IV. Plaintiff's Reservation of a "Right" to Seek Punitive Damages Should .......................39
 be Stricken

Conclusion ...........................................................................................................................40

# TABLE OF AUTHORITIES

## RULES

Fed. R. Civ. P. 7 ..................................................................................................................1

Fed. R. Civ. P. 12 ....................................................................................................1, 24, 39, 40

Fed. R. Civ. P. 41 ................................................................................................................1

S.D. Fla. LR 7.1 ..................................................................................................................1

## STATUTES

18 U.S.C. § 1590 ..................................................................................................................3

18 U.S.C. § 1591 ..............................................................................................................3, 25

18 U.S.C. § 1592 ..............................................................................................................3, 25

18 U.S.C. § 1593A ..........................................................................................................3, 25

18 U.S.C. § 1594 ..............................................................................................................3, 25

18 U.S.C. § 1595 ........................................................................................................25, 26, 40

28 U.S.C. § 1331 ................................................................................................................24

§ 95.11, Fla. Stat. ....................................................................................................26, 27, 28, 40

§ 743.07, Fla. Stat. ..............................................................................................................29

## CASE LAW

*ABF Freight Sys., Inc. v. NLRB* ........................................................................................19
    510 U.S. 317 (1994)

*Ashcroft v. Iqbal* ................................................................................................................24
    556 U.S. 662 (2009)

*Baldwin Cnty. Welcome Ctr. v. Brown* ............................................................................31
    466 U.S. 147, 104 S. Ct. 1723, 80 L. Ed. 2d 196 (1984)

*Basel v. Sec'y of Defense* ..................................................................................................30
    507 Fed. Appx. 873 (11th Cir. 2013)

*Bassett v. Wal-Mart Stores E., LP* ........................................................................18, 19
  No. 18-61984-CIV, 2019 WL 4691824 (S.D. Fla. July 10, 2019)

*Bell Atl. Corp. v. Twombly* ......................................................................................24
  550 U.S. 544 (2007)

*Blake v. Batmasian* ..............................................................................................39, 40
  318 F.R.D. 698 (S.D. Fla. 2017)

*Boddie v. Moore* ..............................................................................................29, 31, 32
  No. 01-6469-CIV, 2001 WL 37131161 (S.D. Fla. Nov. 28, 2001)

*Cabello v. Fernandez-Larios* ..........................................................................31, 32, 33
  402 F.3d 1148 (11th Cir. 2005)

*Cada v. Baxter Healthcare Corp.* ..........................................................................33
  920 F.2d 446 (7th Cir. 1990)

*Cox v. Burke* ............................................................................................................19
  706 So. 2d 43 (Fla. 5th DCA 1998)

*Demeza v. Hartford Ins. Co. of the Midwest* ..........................................................24
  No. 8:11-cv-2522, 2012 WL 163818 (M.D. Fla. Jan. 19, 2012)

*Diaz v. Amezquita* ..................................................................................................26
  No. 20-62583-CIV, 2021 WL 2156916 (S.D. Fla. May 27, 2021)

*Doe (Jane) v. Indyke* ..............................................................................................39
  468 F. Supp. 3d 625 (S.D.N.Y. 2020)

*Doe (Lisa) v. Indyke* ..............................................................................................39
  465 F. Supp. 3d 452 (S.D.N.Y. 2020)

*Doe (Mary) v. Indyke* ............................................................................................39
  457 F. Supp. 3d 278 (S.D.N.Y. 2020)

*Geiss v. Weinstein Co. Holdings LLC* ....................................................................34
  383 F. Supp. 3d 156 (S.D.N.Y. 2019)

*Gleman v. MWH Am., Inc.* ......................................................................................21
  309 So. 3d 681 (Fla. 4th DCA 2021)

*Goforth v. Owens* ....................................................................................................18
  766 F.2d 1533 (11th Cir. 1985)

*In re Chiquita Brands Int'l, Inc. Alien Tort Statute & S'holder Derivative Litig.* .......................30
    690 F. Supp. 2d 1296 (S.D. Fla. 2010)
    *on reconsideration in part*, No. 08-01916-MD
    2015 WL 71562 (S.D. Fla. Jan. 6, 2015)

*Irwin v. Dep't of Veterans Affairs* ......................................................................35
    498 U.S. 89, 111 S. Ct. 453, 112 L. Ed. 2d 435 (1990)

*Jacobs v. Tempur-Pedic Int'l, Inc.* ......................................................................24
    626 F.3d 1327 (11th Cir. 2010)

*Keefe v. Bahama Cruise Line, Inc.* ......................................................................30
    867 F.2d 1318 (11th Cir. 1989)

*Lama v. Malik* ................................................................................35, 37, 38
    192 F. Supp. 3d 313 (E.D.N.Y. 2016)

*Lawrence v. Florida* ......................................................................35
    549 U.S. 327, 127 S. Ct. 1079, 166 L. Ed. 2d 924 (2007)

*Lohr v. Byrd* ......................................................................39
    522 So. 2d 845 (Fla. 1988)

*Malautea v. Suzuki Motor Co., Ltd.* ......................................................................17
    987 F.2d 1536 (11th Cir. 1993)
    *cert. den.,* 510 U.S. 863, 114 S. Ct. 181, 126 L. Ed. 2d 140 (1993)

*Managed Care Sols., Inc. v. Essent Healthcare, Inc.* ..........................................22, 23
    736 F. Supp. 2d 1317 (S.D. Fla. 2010)

*Mann v. Taser Int'l, Inc.* ......................................................................22, 23
    588 F.3d 1291 (11th Cir. 2009)

*Martin v. Automobili Lamborghini Exclusive, Inc.* ......................................................17
    307 F.3d 1332 (11th Cir. 2002)

*Miranda v. Ponce Fed. Bank* ......................................................................24
    948 F.2d 41 (1st Cir. 1991)

*Noble v. Yorke* ......................................................................30
    490 So. 2d 29 (Fla. 1986)

*Oluoch v. Orina* ......................................................................39
    101 F. Supp. 3d 325 (S.D.N.Y. 2015)

*Palm Beach Atl. Coll., Inc. v. First United Fund, Ltd.*  ...........................................................26
   928 F.2d 1538 (11th Cir. 1991)

*Patterson v. Lew* .........................................................................................................................19
   265 Fed. Appx. 767 (11th Cir. 2008)

*Pearl v. City of Long Beach*  ..................................................................................29, 33, 35, 36
   296 F.3d 76 (2d Cir. 2002)

*Pedraza v. United Guar. Corp.*  ..............................................................................................29
   114 F. Supp. 2d 1347 (S.D. Ga. 2000)

*Poindexter v. Zacharzewski*  ....................................................................................................39
    No. 18-14155-CIV, 2018 WL 6182590 (S.D. Fla. Nov. 5, 2018)

*Porcelanas Florencia, S.A. v. Caribbean Resort Suppliers, Inc.*  ...........................................39
   No. 06-22139, 2007 WL 171590 (S.D. Fla. Jan. 18, 2007)

*Prime Ins. Syndicate, Inc. v. Sail Tech Distribs., Inc.*  ............................................................26
   270 F. Appx. 962 (11th Cir. 2008)

*Pucci v. Carnival Corp.*  ...........................................................................................................39
   160 F. Supp. 3d 1329 (S.D. Fla. 2016)

*Raziano v. United States*  .........................................................................................................30
   999 F.2d 1539 (11th Cir. 1993)

*Rhea v. Hackney* ................................................................................................................20, 21
   157 So. 190 (Fla. 1934)

*R.R. v. New Life Cmty. Church of CMA, Inc.*  ....................................................................27, 28
   303 So. 3d 916 (Fla. 2020)

*Sandvik v. United States*  ....................................................................................................31, 32
   177 F.3d 1269 (11th Cir. 1999)

*Savino v. Fla. Drive In Theatre Mgmt., Inc.*  ...........................................................................19
   697 So. 2d 1011 (Fla. 4th DCA 1997)

*Sec'y of Labor v. Labbe*  ...........................................................................................................26
   319 Fed. Appx. 761 (11th Cir. 2008)

*Shropshear v. Corp. Counsel of Chi.*  ......................................................................................35
   275 F.3d 593 (7th Cir. 2001)

*Sinaltrainal v. Coca–Cola Co.* ...................................................................................23
   578 F.3d 1252 (11th Cir. 2009)

*Snell v. Ford Motor Co.* ..............................................................................................22
   No. 12-23036-CIV, 2014 WL 11822753 (S.D. Fla. July 31, 2014)

*S.R. v. U.S.* ................................................................................................................31
   555 F. Supp. 2d 1350 (S.D. Fla. 2008)

*United States v. St. Mary's Ry. W., LLC* ...................................................................30
   989 F. Supp. 2d 1357 (S.D. Ga. 2013)

*Vargas v. Peltz* ...................................................................................................17, 18
   901 F. Supp 1572 (S.D. Fla. 1995)

*Veltri v. Bldg. Serv. 32B-J Pension Fund* .................................................................35
   393 F.3d 318 (2d Cir. 2004)

*Vergara v. City of Chi.* ...............................................................................................35
   939 F.3d 882 (7th Cir. 2019)

*Villarreal v. R.J. Reynolds Tobacco Co.* ..............................................................31, 33
   839 F.3d 958 (11th Cir. 2016)

*Youngblood-W. v. Aflac Inc.* ......................................................................................32
   No. 4:18-CV-83 (CDL), 2018 WL 10562576 (M.D. Ga. Nov. 9, 2018)
   *aff'd*, 796 Fed. Appx. 985 (11th Cir. 2019)

*Zocaras v. Castro* .......................................................................................................18
   465 F.3d 479 (11th Cir. 2006)

Defendants, Darren K. Indyke and Richard D. Kahn, as Co-Executors of the Estate of Jeffrey E. Epstein ("the Estate"), move under Federal Rules of Civil Procedure 7(b), 12(b)(6), and 41(b) and Southern District of Florida Local Rule 7.1, to dismiss Plaintiff's March 22, 2021, Complaint (D.E. 1) for fraud upon the Court, spoliation of evidence, and failure to state a claim; to strike Plaintiff's reservation to seek punitive damages; and for sanctions.

## PRELIMINARY STATEMENT

Plaintiff is making a mockery of true victims whom the Co-Executors have long endeavored to fairly compensate. Within days of their appointment, the Co-Executors began the long, arduous process of voluntarily establishing the uncapped Epstein Victims' Compensation Program (the "Compensation Program"), a claims program funded entirely by the Estate, which the Probate Division of the Superior Court of the U.S. Virgin Islands later approved.

The Compensation Program provided those who asserted they were victimized by Jeffrey Epstein ("Epstein") with an independent, confidential, voluntary, and non-adversarial alternative to litigation. In creating the Compensation Program, the Co-Executors adopted several important principles that they deemed fundamental to the Compensation Program's fairness, efficacy, and success: the Estate would pay for all the expenses of the Compensation Program, which would be designed and run by independent, nationally-renowned administrators and have no monetary cap on compensation, either for individual claims or in the aggregate.

The Co-Executors further established that, even claimants who had previously settled with Epstein and executed liability releases, and claimants whose allegations of sexual abuse were time-barred, would still be eligible to participate in the Compensation Program. Only highly qualified and experienced women were selected to be interviewed for the position of Program Administrator. Ultimately, the Co-Executors engaged Jordana Feldman, a former Deputy Special Master of the September 11th Victim Compensation Fund, to be the fully independent Program Administrator. Ms. Feldman, along with Camille Biros and Ken Feinberg, designed the Compensation Program.

The Compensation Program launched on June 25, 2020 and completed its claimant-facing operations on August 9, 2021. The Compensation Program was a huge success by all relevant measures: it awarded nearly $125 million to approximately 150 claimants; 92% of eligible claimants accepted their compensation offers; a combined total of $120 million was paid to 136 claimants; claims were generally processed and paid within 60 to 90 days, which included

1

the review of the claim, a meeting with the Administrator, and issuance of the determination, and allowed for a 60-day response period for claimants to fully consider the offer.

As Ms. Feldman confirmed in a press release[2] announcing the end of the claimant-facing operations, consistent with the Compensation Program's governing Protocol, Ms. Feldman administered the Program independently of and entirely free from any interference or control by the Estate. Ms. Feldman also stated that she had complete autonomy and decision-making authority to determine individual claimant eligibility and compensation and evaluated each claim on its merits without reference to any individual or aggregate cap on compensation amounts. Ms. Feldman further noted that preserving claimant privacy and treating victims with compassion and sensitivity was critical to the Compensation Program's success.

Since the Compensation Program ended, the Co-Executors have endeavored to resolve remaining claims (*i.e.*, claims not resolved via the Program either because a claimant was deemed ineligible to receive compensation or because a claimant declined to accept the amount determined by the Program Administrator) by mediation, thereby giving claimants who desired it yet another opportunity to resolve their claims via alternative dispute resolution. These efforts have been very successful, with only a relatively few claims still pending against the Estate.

## INTRODUCTION

### A. Plaintiff has Committed Fraud Upon the Court and Destroyed Evidence

Putting aside the fact that Plaintiff's claims are barred by the applicable statute of limitations, it bears mentioning that from the filing of this lawsuit, the Co-Executors have been concerned that the events described by Plaintiff, who is a prolific *pro se* litigant,[3] never occurred. Regardless, the Co-Executors and their counsel have long given Plaintiff the benefit of the doubt.

Regrettably, these concerns were recently proven well-founded when the Co-Executors' counsel uncovered Plaintiff's sworn testimony in another action which directly contradicts her testimony on critical issues in this action. The newly discovered testimony, coupled with Plaintiff's former counsel's shocking disclosure that Plaintiff's brother and son recently shredded

---

[2] https://www.epsteinvcp.com/documents/67.

[3] A public records search in South Florida alone revealed that Plaintiff filed more than twenty actions *pro se*, including **seven** actions seeking protection orders for violence. Two of those actions were filed in **June 2008** alleging violence perpetrated against Plaintiff in **February, March, and May 2008** (the relevant times in this case). (**Exhibit A**.) Similar to her attempt in this action, Plaintiff scattered allegations of threats to her and her son into the storylines of multiple other actions. (**Exhibit B**.)

key evidence in this case -- Plaintiff's passport – i.e., long after she filed this action in which her age and location on certain dates are determinative issues – renders this Motion necessary and timely.

The time frame at issue in Plaintiff's Complaint - January 2008 through May 2008 – involves critical months in the criminal investigation and negotiation of charges against Jeffrey Epstein. In this action, Plaintiff sued the Estate, claiming that while Plaintiff was in South Florida, Epstein raped her between January 2008 and May 2008, over thirteen years ago when Plaintiff was allegedly 26 years old. (D.E. 1, ¶¶ 19, 21.) Plaintiff brought this lawsuit pursuant to both federal and state law, specifically the TVPA[4] and state common law torts claiming rape and sexual assault, battery, intentional and negligent infliction of emotional distress, and fraud and misrepresentation. (D.E. 1.)

In addition to the outlandish allegations in her Complaint (Plaintiff claimed that Epstein threatened to feed her to alligators), during her deposition testimony Plaintiff made other outlandish claims, for instance, that she, Epstein and Ghislaine Maxwell were going to "take down" someone in Cyprus who was "messing" with Epstein's friend, a casino owner. (D.E. 1, ¶¶ 59-61; Ex. C, 189:25-190:12).[5] Plaintiff made numerous additional under-oath representations that are improbable when looked through the lens of Epstein's well-publicized lifestyle.

Plaintiff's time frame of the alleged events similarly makes no sense. For example, during the relevant timeframe Maxwell was dating Ted Waitt. After the Palm Beach Police Department raided Epstein's Palm Beach home in October 2005, Maxwell was not with Epstein and was devoting time to her relationship with Mr. Waitt in California. Thus, it is unlikely that Maxwell was in Palm Beach during Plaintiff's 2006-2007 time frame when Maxwell allegedly met Plaintiff at a barbecue and spent time going to the movies and shopping with her, or the alleged 2008 rapes and Naples trip. (D.E. 1, ¶ 43) (Ex. C, 30:8-41:5). Second, in June 2007, Epstein's defense lawyers documented to the U.S. Attorney that Epstein had not been in Florida since October 2005. (**Exhibit D**.) Therefore, Epstein could not have attended a barbecue with Plaintiff in late 2006 or early 2007. Third, the flight records maintained by Epstein's pilots for his private aircrafts demonstrate that he was in the U.S. Virgin Islands or New York the entire

---

[4] 18 U.S.C. § 1595, based on alleged violations of (1) 18 U.S.C. § 1591 (Count I), (2) 18 U.S.C. § 1590 (Count II), (3) 18 U.S.C. § 1592(a) (Count III), (4) 18 U.S.C. § 1593A (Count IV), and 18 U.S.C. § 1594(a) and (c).

[5] Plaintiff's June 23, 2021, deposition transcript in this case is attached as **Exhibit C**.

3

month of January 2008. (**Exhibit E**.) Finally, documentary evidence shows that the motorcycle identified by Plaintiff as being in Epstein's garage was given to Epstein's girlfriend's father in 2006 – two years before Plaintiff claimed that she observed it at Epstein's Palm Beach house. (**Exhibit F**.)

Because of the Estate's concerns that Plaintiff's representations conflicted with known facts, Plaintiff's deposition was taken in this action and she was asked questions directed to the core of her claim and the known inconsistencies with reality. Specifically, the Estate's counsel asked Plaintiff about her interrogatory answers provided in her wrongful discrimination lawsuit against ██████████ in which she swore that she was in Turkey in a mental hospital for psychological treatment in early 2008. During the deposition, Plaintiff claimed that the answers were fabricated by her attorney in the ██████ case, she never verified them, and she was not in Turkey in 2008. (Ex. C, 198:17-199:7.) Relatedly, when the Estate's counsel asked Plaintiff for her passport to verify her whereabouts during the early 2008 period, Plaintiff produced a suspicious photocopy that appears to have been materially altered. (**Exhibit G**.) Even more concerning, when asked to produce the actual passport for inspection, Plaintiff conveniently responded that during the pendency of this lawsuit, her actual passport was shredded. (**Exhibit H**.)

Through much effort, the Estate obtained Plaintiff's 2009 deposition transcript in Plaintiff's wrongful discrimination suit against ██████ (**Exhibit I**.) During Plaintiff's 2009 deposition, she testified under oath that in January, February, and May of 2008, she was, in fact, in Turkey obtaining psychological treatment and she verified her interrogatory answers. (Ex. I, 93:15-23; 97:16-22; 100:4-11; 101:7-9; 326:13-17.)

Plaintiff's entire lawsuit is a sham and a blatant attempt to misuse the court system for fraudulent purposes. Plaintiff consciously set in motion an unconscionable scheme calculated to interfere with the judicial system's ability to impartially adjudicate a matter by advancing false allegations that go to the core of her claim that Epstein raped her in early 2008. Plaintiff either suffers from mental illness causing her delusion, or intentionally lied multiple times in bringing this lawsuit. In either event, she destroyed crucial evidence that would prove her Epstein interaction was fabricated and thus, she has committed a fraud upon this Court. The Estate's counsel continually expressed its concern to Plaintiff's former counsel before they withdrew. Within fifteen minutes of filing their Motion to Withdraw, Plaintiff's now-former counsel

disavowed Plaintiff's production of the copied pages of her purported passport and the Declarations of Plaintiff's son and brother claiming the destruction was unintentional. (**Exhibit J**.)

      **B.**     **Plaintiff's Complaint is Time-Barred**

Equally compelling, dismissal with prejudice of Plaintiff's March 2021 Complaint is required because it fails to state a claim upon which relief can be granted as a matter of law. On its face, the Complaint is time-barred because the federal Trafficking Victims Protection Act ("TVPA") claims were not brought by May 2018 and the state common law tort claims were not brought by May 2012.

Moreover, as to the TVPA claims, Plaintiff cannot avail herself of the rare and exceptional relief of equitable tolling because she failed to plead the threshold element of not knowing she had a cause of action to bring. Additionally, Plaintiff failed to allege the requisite due diligence and extraordinary circumstances to warrant tolling of thirteen years from the alleged 2008 incident -- three years for the federal claims which were time-barred after May 2018.

The Florida state common law claims are barred as a matter of law because Florida does not recognize common law equitable accrual and tolling doctrines.  Florida only recognizes the built-in statutory accrual and tolling provision – none of which are applicable here.

The only issue for this Court to consider based on the timeliness of Plaintiff's claim is whether there is an equitable basis to extend the deadline for the filing of Plaintiff's TVPA claims. Application of the statute of limitations requires a purely mathematical analysis and provides certainty in the law. No special exception to the finite statute of limitations exists for Plaintiff's outrageous facts of alleged conduct. Thus, Plaintiff's alleged egregiousness of the tortious acts has no impact on the mathematical calculation of days for a party's legal right to timely sue.

**PLAINTIFF'S FRAUD UPON THE COURT, SPOLIATION**
**OF EVIDENCE, AND TIME-BARRED CLAIMS**

      **A.**     **Plaintiff's Complaint**

In her Complaint, Plaintiff alleged that she was raped, sexually abused, physically assaulted, mutilated, and sex and labor trafficked by Jeffrey Epstein in South Florida between **January 2008 and May 2008**. (D.E. 1, ¶¶ 19, 65, 71.) Evidence discovered by Defendants

proves Plaintiff's allegations are false.

Plaintiff also alleged that in or about late 2006 or early 2007 she was introduced to Epstein and Ghislaine Maxwell by her then boss. (D.E. 1, ¶¶ 42-43.) Maxwell allegedly attempted to persuade Plaintiff to work for Epstein throughout 2007. (D.E. 1, ¶ 46.) In addition, in mid-2007 Maxwell allegedly took Plaintiff's passport for "safekeeping" and provided it to Epstein who Plaintiff claimed kept it in a locked box at his Palm Beach residence. (D.E. 1, ¶ 47.) Allegedly, the passport was not returned to Plaintiff until May 2008. (D.E. 1, ¶¶ 48, 102, 103.)

Plaintiff claimed that in early to mid-January 2008 she was brutally raped by Epstein and Maxwell at Epstein's Palm Beach residence and was forced to accept $200 as "compensation." (D.E. 1, ¶¶ 51, 52, 54.) During her deposition in this case, however, Plaintiff testified that she was _never_ paid for sexual intercourse with Epstein or others. Rather, she was paid for cutting Epstein's hair (_before_ the first alleged rape), for a painting, and to be Epstein's driver. (Ex. C, 96:17-97:16; 178:11-179:6; 179:4-6; 248:13-24.)

The next day, Plaintiff was allegedly forced to drive Epstein, Maxwell and her young son to Naples where she was allegedly raped in front of her son multiple times. (D.E. 1, ¶¶ 58, 63.) During her deposition, however, Plaintiff claims that she voluntarily picked her son up and brought him with them to Naples and that her son never witnessed any of the alleged rapes.[6] (Ex. C, 64:7-65:8, 114-20-115:22, 149:13-17.)

In addition, Plaintiff testified that during the alleged first sexual encounter with Epstein and Maxwell in January 2008, she did not fight, kick, hit or scream and Epstein never threatened her with a gun. (Ex. C, 72:23-81:7; 90:22-92:15.) She also voluntarily stayed overnight at Epstein's home after the alleged rape. (Ex. C, 105:6-106:20.) Also, for those men she claims she was "sex trafficked" to, including allegedly ███████████████████████████ ████████████████, Plaintiff testified that she was not forced or threatened to have intercourse with them. (Ex. C, 59:18-62:3; 168:17-169:6; 173:10-174:7; 176:21-178:7.)

Further, Plaintiff claimed that in May 2008, she submitted to unwanted and unnecessary vaginal reconstructive surgery performed in someone's home. (D.E. ¶ 72.) During her deposition, however, Plaintiff testified that she was given the _option_ to have the surgery, it was explained to her, and she elected to have the procedure performed. (Ex. C, 180:15-181:20; 183:5-

---

[6] It is outlandish to believe that after being brutally raped Plaintiff would voluntarily pick up her son and take him on a trip to Naples with Epstein and Maxwell.

184:10.)

Likely anticipating the clear, plain statute of limitations set forth below for the TVPA and state law claims, Plaintiff also alleged in a vague fashion that Epstein, or others on his behalf, made "false or misleading acts and statements" with the "express purpose…of preventing Plaintiff from commencing any lawsuit or claim against him or his associates." (D.E. 1, ¶ 83.) Plaintiff further alleged "constant fear" until she learned of Epstein's death. (D.E. 1, ¶¶ 76, 86.)

Finally, Plaintiff alleged that she did not bring her claims earlier because "[p]rior to 2008, during that year, and through the present, Plaintiff did not regularly follow news or public affairs and was unaware of the legal and criminal matters relating to Epstein." (D.E. 1, ¶ 29.)

### B.       Plaintiff Cannot Overcome the Time-Barred Nature of Her Claims

Recognizing the fraud Plaintiff has perpetrated upon the Court, Plaintiff's claimed fear of reporting the alleged abuse by Epstein and her alleged lack of knowledge about publicized events of Epstein's 2008 plea and incarceration are highly suspect. The "I was living under a rock" representation was pled for the sole purpose of evading the statute of limitations for fraudulent claims.

The relevant time period in this case is January 2008 through May/early June 2008. However, in June 2008, Plaintiff filed *two* Petitions for Injunction for Protection Against Repeat Violence. (**Composite Exhibit K.**) In the first petition, against ▓▓▓▓▓▓▓▓▓▓, Plaintiff complained that in **February and May 2008** ▓▓▓▓▓▓▓▓ verbally and fiercely attacked her and threatened to kill her and burn her home down when she changed her mind about selling real property. *Id.* The second petition, against ▓▓▓▓▓▓▓▓ (later amended to ▓▓▓▓▓▓▓) involved a dispute on her apartment property in **January and March 2008** (later amended to **February and March 2008**) wherein Plaintiff alleged that ▓▓▓▓▓▓ physically attacked her and threatened to kill her if she called the police. *Id.* Clearly, at the relevant times in this case, Plaintiff was involved with altercations with others who threatened her life, yet she was capable of engaging the police and even actively filed Petitions for Protection. It defies logic and reason why Plaintiff could not do so here during the same time period - if her claims of abuse by Epstein were true.

In addition, even though Plaintiff's co-workers at ▓▓▓▓▓▓ allegedly threatened that they would make money disappear from her money drawer resulting in Plaintiff being arrested for a felony, and she was fearful because of those threats, Plaintiff still filed a wrongful

discrimination claim against ███████ in ███ 2009. (**Exhibit L;** Ex. I, 99:3-25; 260:8-12.)

Also, in August 2009, Plaintiff filed a Petition for Injunction for Protection Against Repeat Violence against her friend who allegedly threw her son into a busy street, threatened and tried to hurt her, and was trying to damage her reputation and get her killed by not honoring her Turkish culture by spreading rumors that she was "**doing sex for money.**" (**Exhibit M.**)

Plaintiff's allegation that she did not regularly follow news or public affairs (D.E. 1, ¶ 29) is also patently false. For instance, in ███████ 2009 in the ███████ case, Plaintiff testified that she traveled to Turkey to seek mental health treatment because if she sought treatment in the United States it could be discovered. She learned this information because she was "watching t.v. **all the time.**" (Ex. I, 95:25-97:1.)

### C.  Plaintiff Committed Perjury About Travel and Medical Treatment in 2008

Plaintiff testified that the first alleged rape occurred in the middle of January 2008. (Ex. C, 9:23-10:6.) Plaintiff recalled the date because it was after her birthday, which she celebrated on either January 3 or 5, and before Epstein's birthday, which was on January 20. (Ex. C, 10:7-18; 16:12-15; 18:22-24; 19:6-10; 134:4-7.) Therefore, the first alleged rape occurred sometime between January 6 and January 19, 2008.

Plaintiff also testified that Maxwell took her passport sometime between September and November 2007[7], and did not return it to her until the first week of June 2008; Plaintiff therefore could not leave the country. (Ex. C, 107:8-110:14.) ("Q: You didn't have a passport. You could not leave the country? A: No.") *Id.*

In ████ 2009, Plaintiff filed a wrongful discrimination suit against ███████████. ████████ removed the matter to this Court in ████ 2009. (Case No. ███████████ ███████████) ("██████ case"). Plaintiff did not comply with her discovery obligations in that matter and on ███████ 2009, ████████ moved to compel and for sanctions, seeking better discovery responses and a signed Verification to Plaintiff's Answers to Interrogatories. (**Exhibit N.**) In her ██████ 2009 Answers to ███████ Interrogatories asking about Plaintiff's medical treatment from ██████████████, Plaintiff answered:



---

[7] Plaintiff testified that she provided her passport and other documents to Maxwell because Epstein was going to help her with properties in foreclosure. (Ex. C, 108:4-6.)



**(Exhibit N,** D.E. 14-1, pp. 6, 20.)

████ took Plaintiff's deposition four days later, on ██████, 2009. (**Exhibit I**.) Plaintiff verified her ████ 2009 Interrogatory Answers a few days before her deposition and Plaintiff confirmed that her answers were 100% accurate. (Ex. I, 18:18-20:23; 28:12-29:8.)

Plaintiff testified under oath that she was treated by a psychologist by the name of ████ ████ in Istambul, Fathiah, Turkey on January 29, February 14 and 15 and May 16, 2008. (Ex. I, 93:15-23; 97:16-22; 100:4-11; 101:7-9; 326:13-17.) Plaintiff claimed that she was depressed after losing her job at ████ and traveled to Turkey to seek treatment. (Ex. I, 94:3-7.) Plaintiff testified that she researched doctors online and her friend, who worked in the Turkish government, assisted her in finding a doctor. (Ex. I, 327:5-13.) When asked what she talked to the doctor about, Plaintiff testified:

> Q. What did you and he talk about?
> A. He talk about being strong. You know, being strong and be good mom. You know. How I can develop. How I can get over it.
> Q. What did you tell him about?
> A. I told about everything. I mean –
> Q. Tell me. Tell me what you told him.
> A. I don't remember everything right now.
> Q. Tell me anything you remember that you told him.
> A. I been – after this happened I been scared a lot at my house. I don't know what I have to do because it keep it flashing in my head. She told me she can do everything. Like even I cannot see my son like five years. Go jail. She said she has access. That's my manager. She told me. So I scared. Even I was planning to move back to Turkey.
> Q. You were planning to move back to Turkey?
> A. At that time, yes.
> Q. When were you planning to move back to Turkey?
> A. At that time after my job I got fired I was planning to move back to the Turkey.
> Q. Why?
> A. Because she told me – the ████ told me if I don't quit she told me she has access some way my drawer, money disappear, and I will not see my son for five years.
> Q. So ████ –

> A. Five years. They say they charge felony. They said "if you be smart, just be peace and go back where you come from or quit or you think you are smart." That she told me.
> Q. And you told your psychologist about this?
> A. Yes.

(Ex. I, 98:10-100:3.) Although Plaintiff had allegedly just been brutally raped by Epstein and Maxwell according to her timeline of events in this case, there is no mention of those discussions with her psychologist in Turkey in January, February, and May 2008.

In the ███████ case, Plaintiff testified that she traveled to Turkey on January 28, 2008, and stayed there for **twenty days**. (Ex. I, 94:3-11; 98:9.) That means she returned to Florida on or about February 17, 2008. Plaintiff testified that she traveled to Turkey again the first week of May 2008 for additional treatment, and returned to Florida on approximately May 17 or 18, 2008. (Ex. I, 94:12-95:20.) Plaintiff reconfirmed her 2008 travel throughout her ███████ deposition. For instance, she stated she did not receive important mail from the EEOC in early 2008 relating to her ███████ discrimination charge because she was in Turkey (Ex. I, 231:12-232:13), her family in Turkey could attest to the emotional distress she suffered as a result of being terminated by ███████ because she went to Turkey (Ex. I, 322:19-323:3), and her schooling at ███████ University was delayed because she was traumatized by ███████ termination of her and she went to Turkey (Ex. I, 165:14-166:21). It also appears that Plaintiff produced a copy of a plane ticket during her ███████ deposition, but ███████ counsel needed time to review the documents and was going to reconvene the deposition. (Ex. I, 311:9-21.) The ███████ case settled before a second deposition session. Unfortunately, ███████ no longer has copies of Plaintiff's deposition exhibits. Nevertheless, it can be inferred that the plane ticket related to Plaintiff's 2008 travel to Turkey because that is the only travel that was at issue during the deposition.

The ███████ case timeline contradicts Plaintiff's allegations and testimony in this case that Epstein had possession of her passport from November 2007 through May 2008, and she was unable to leave the country. (D.E. 1, ¶¶ 47, 48, 102, 103; Ex. C, 110:2-14.) More importantly, however, is that Plaintiff's travel to Turkey (for psychological treatment for depression due to losing her ███████ job) in January, February and May 2008, was at a time when Epstein and Maxwell were allegedly raping and sex trafficking her and forcing her to have vaginal reconstructive surgery. (D.E. 1, ¶¶ 19, 51, 52, 58, 63, 65, 71, 72.)

After her ▉▉▉ deposition, on ▉▉▉▉ 2009, Plaintiff served unverified Supplemental Answers to ▉▉▉ Interrogatories. Plaintiff amended her answers about medical treatment since ▉▉▉ as follows:



**(Exhibit O.)** These Answers to Interrogatories disclosed additional mental health providers Plaintiff saw in Turkey in January and February 2008 and disclosed that she was in a mental hospital for six days. *Id.*

Plaintiff's ▉▉▉ 2009 Supplemental Answers to Interrogatories were introduced as an exhibit at Plaintiff's June 23, 2021, deposition in this case. (Ex. O.) Plaintiff was questioned in this case about travel to Turkey in 2008 and medical treatment during that time. (Ex. C, 195:5-199:7.) Plaintiff testified in this case that she was never in a mental hospital nor visited any of the doctors identified. (Ex. C, 196:9-21.) In fact, Plaintiff claimed that her attorney made up the answers. (Ex. C, 198:17-199:7.) One could conclude from a cursory review of the Answers, however, that they were written in the first person, in broken English, not in a format typical of an attorney. (Ex. O.)

When Plaintiff was asked in this case if she traveled to Turkey in January and February 2008, she testified under oath that she **did not**. Plaintiff also testified that she did not seek mental health treatment:

> Q.  Ma'am, **did you go to Turkey in January and February 2008**.
> A.  **No, I didn't**.
> Q.  Where is your passport?
> A.  I don't have passport at the time.
> Q.  Where is your passport from 2008? Do you still have it?
> A.  Yes.
> Q.  Take a look at this. Is it your testimony today that your answers to interrogatories filed by your lawyer in your lawsuit against ▉▉▉ are not true?
> A.  Yes, **I didn't never go January 2008 in Turkey**.

(Ex. C, 196:25-197:13; *also see* 197:14-198:8.) Plaintiff further testified that she never talked to a doctor in Turkey in 2008 ("I never go to talk doctor in Turkey.") (Ex. C, 250:11-12.) Plaintiff

clearly committed perjury because Plaintiff testified in the ██████ case that she was in Turkey in January, February, and May 2008, for approximately 30 days. (Ex. I, 94:3-95:20; 98:9.)

       **D.**    **Plaintiff Destroyed Critical, Case-Ending Evidence**

Following Plaintiff's June 23, 2021, deposition in which she testified that she was in possession of her Turkish passport, the Estate's counsel asked Plaintiff to produce it. In response, on July 9, 2021, Plaintiff produced scanned and bates stamped color photographs of her Turkish passport and U.S. Visa (collectively, "passport"). (JD_000001-JD_000031) (**Exhibit G**). While the pages produced do not appear to reflect travel in 2008, three of the pages have been altered. Specifically, stains and stamps stop at the inner hinge, unlike the other pages produced:



(**Exhibit G.**)

Suspecting the photocopies were altered, on October 28, 2021, Defendants' counsel

requested an inspection of Plaintiff's original passport. On November 8, 2021, Plaintiff's former counsel advised that Plaintiff's son and brother <u>destroyed</u> the passport in September 2021 and Plaintiff's counsel provided the original photographs Plaintiff took before the documents were scanned and bates stamped. (**Exhibit H**.) Those photographs *also* evidence that the passport appears altered. *Id.* Thereafter, Plaintiff provided Declarations of Plaintiff's son and brother declaring that they were clearing out old documents and shredded Plaintiff's passport without knowing of its importance and without Plaintiff's knowledge or consent. (**Composite Exhibit P**.) The photocopies of Plaintiff's passport and Declarations have now been disavowed by the two prior law firms who withdrew from representing Plaintiff in this case. *See* email dated December 8, 2021, from Ari Taub, Esq. (**Exhibit J**.)

Plaintiff's passport is directly relevant to the claims alleged in the Complaint and contradicts sworn testimony she provided in the ▋▋▋▋ case. The authenticity of the photographs of the passport is suspect as evidenced by the altered pages identified above. Plaintiff's former counsel had a duty to inform their client to preserve the passport and Plaintiff had a duty to maintain it. Plaintiff's Complaint should be dismissed for, at a minimum, spoliating evidence and potentially seeking to obstruct justice.

This is not the first time Plaintiff has been accused of altering documents. In fact, in the ▋▋▋ case, ▋▋▋▋ counsel sought to compel the production of original documents that Plaintiff produced because ▋▋▋ believed the documents were forgeries. (**Exhibit Q**, p. 9.) ▋▋▋▋ counsel pointed out that he had made repeated requests to inspect the originals to no avail and that he needed to further investigate the possible fraud on the Court. *Id.*

**E.**     **Plaintiff Committed Perjury About Being a Security Guard, Which is Directly Relevant to Her Allegations**

Plaintiff's perjury did not stop with her medical history and travel testimony. Plaintiff testified that Maxwell told her in January 2008 to lie to her husband and tell him that she had a security job to explain her absences. (Ex. C, 52:22-54:23; 71:23-72:7; 174:11-175:2.) When asked if she actually obtained a security guard position, Plaintiff answered: "No, I didn't." (Ex. C, 53:17-19.) When further probed if she *ever* worked as a security guard, Plaintiff answered "No." (Ex. C, 72:8-9.)

After showing Plaintiff records that evidenced she, in fact, obtained security officer licenses on ▋▋▋▋, and ▋▋▋▋ (**Exhibit R**), Plaintiff testified that, although the

licenses were issued in her name, she never worked as a security guard but, rather, she provided her identification to a Russian friend who obtained the licenses because she needed work. ("**I didn't never work security**.") (Ex. C, 193:4-194:25.)

Plaintiff told a different story to ████████ in ████ 2009. Then, Plaintiff testified that she attended classes at a private security company and obtained a security officer license. (Ex. I, 81:1-82:9; 83:9-16.) She then worked in several jobs as a security officer, including at ████████████████ and for ████. (Ex. I, 83:17-85:1.) Plaintiff also filed an EEOC sexual discrimination charge against one of the security companies, alleging that her supervisor sexually harassed her. (Ex. I, 85:6-89:18.) Again, Plaintiff clearly perjured herself in this case when she testified *twice* that she never worked as a security guard.

### F.   Evidence Contradicts Plaintiff's Alleged Timeline of Events

As set forth above, Plaintiff claims that she initially met Epstein and Maxwell in late 2006 or early 2007, Maxwell "groomed" her during 2007 to entice her to work for Epstein, Plaintiff was first raped in January 2008, and the abuse continued until early June 2008. (D.E. 1, ¶¶ 19, 42, 43, 46, 51, 52, 65, 71.) This timeline of events does not comport with the evidence.

#### i.   Epstein's Investigation and Arrest

In March 2005, the Palm Beach Police Department commenced its investigation of Epstein. In October 2005, a search warrant was issued and the Palm Beach Police Department searched Epstein's Palm Beach residence. A Grand Jury indicted Epstein and he was arrested in July 2006, but was released on bond. From July 2006 through June 2008, Epstein was in negotiations concerning a plea deal and a Non-Prosecution Agreement. The Non-Prosecution Agreement included alleged co-conspirers. Importantly, Maxwell was not named in the Non-Prosecution Agreement, which further shows she had minimal contact with Epstein during this period. In June 2008, Epstein pled guilty to one count of solicitation of prostitution and one count of solicitation of minors to engage in prostitution and served thirteen months in jail followed by twelve months of community control.

#### ii.   Maxwell Had Minimum Contacts With Epstein During the Time of the Alleged Events

The Palm Beach Police Department did not consider Maxwell a suspect during its

investigation.[8]  In fact, 

(**Exhibit S**.) Similarly,

(**Exhibit T**.) If Maxwell

was prominently in Epstein's life during the 2007-2008 time frame as Plaintiff claims, one would

assume that Maxwell would have been targeted in the investigation.

Louella Rabuyo was Epstein's housekeeper at his Palm Beach residence for thirteen years

from November 2004 through November 2017. (**Exhibit U**, ¶ 1.) Maxwell is the person who

interviewed and hired Ms. Rabuyo for the position. (**Exhibit U**, ¶ 3.) Ms. Rabuyo did not live on

the premises but worked at Epstein's home five days a week for eight hours a day. (**Exhibit U**, ¶

4.) Ms. Rabuyo saw Maxwell approximately *three* times at Epstein's Palm Beach home between

November 2004 and October 2005 (when the search warrant was served). (**Exhibit U**, ¶ 5.) Ms.

Rabuyo *never* saw Maxwell at Epstein's Palm Beach home after that date. (**Exhibit U**, ¶ 6.) Ms.

Rabuyo did see Maxwell in New York in 2006 when she filled in for Maxwell's housekeeper and

Epstein's housekeeper, on separate occasions. (**Exhibit U**, ¶ 7.)

Finally, news media accounts reflect that Maxwell was involved with Ted Waitt of

Gateway Computer from 2005 to 2011. (**Exhibit V**.) Recently, David Rodgers, one of Epstein's

pilots, testified in Maxwell's trial that it was his recollection that in or around 2004, Maxwell

was in a committed relationship with Mr. Waitt of Gateway Computers and she was separated

from Epstein at that time. (**Exhibit W**.) Similarly, Maxwell's assistant, Cimberly Espinosa,

testified that Maxwell began dating other men in the 2000s, including Mr. Waitt. Ms. Espinosa

left Maxwell's employ in 2002 and recalls that Maxwell was dating Mr. Waitt before she left and

Maxwell was still dating him in the 2008-2009 timeframe. (**Exhibit X**.)

Accordingly, Plaintiff's alleged involvement with Maxwell from late 2006 through June

2008 is unsupported and compounds Plaintiff's false statements.

### iii.    Epstein Had Minimum Contacts in Florida at the Time of the Alleged Events

Similarly, Epstein had minimum contacts in Florida from late 2006 or early 2007 when

he allegedly first met Plaintiff at a barbecue through early June 2008 because he was under

investigation in Florida. In fact, on June 25, 2007, Epstein's counsel advised the United States

---

[8] Maxwell's 2020 Indictment focuses on Maxwell's involvement with Epstein from 1994 to 2004.

Attorney's Office that Epstein had **stopped traveling to Florida beginning in October 2005**. (**Exhibit D**, fn 9.)

In addition, while Epstein's flight records during the January 2008 through June 2008 time frame do not identify passengers, the Estate reasonably believes that if Epstein's planes flew to the U.S. Virgin Islands, Paris, and New Mexico, that Epstein was, most likely, on those flights. With that assumption, the flight records reflect that Epstein was either in New York or the U.S. Virgin Islands in January 2008 when Plaintiff claims Epstein first raped her in Florida. The following calendar provides an illustration of what the flight records show in comparison to the dates Plaintiff testified about celebrating her and Epstein's birthdays and being raped in his Palm Beach home and Naples, Florida:



(Flight Logs, **Exhibit E**, Estate-000985.)

    iv.    **The Motorcycle and Towel Closet**

During her deposition in this case, Plaintiff testified that after the alleged rape in January 2008 she hid in Epstein's garage by a motorcycle. (Ex. C, 104:13-19.) She then claimed that she was locked in a towel closet all night. (Ex. C, 128:4-129:5.)

The October 2005 search warrant, which is publicly available, reflects that a green Harley Davidson Motorcycle was found in Epstein's garage during the search and that there was a towel

---

(*United States of America v. Ghislaine Maxwell*, S.D.N.Y., Case No. 20-CR-330.)

closet located off the kitchen:

> Detective Dicks and I were assigned to assist in the search of the
> main house, the cabana and the servant's quarters.  We started in the
> garage.  All areas of the garage were searched to include four
> vehicles.  These vehicles were three black Mercedes Benz cars
> registered to Jeffrey Epstein.  ==The fourth vehicle was a Harley
> Davidson motorcycle, green in color, registered to Jeffrey Epstein==.
> Nothing was recovered from the garage.
>
> ==A towel closet== and pantry ==located off the kitchen== were searched and
> yielded negative results.

(**Exhibit Y**.)

　　　Tellingly what was *not* public is that Epstein **gifted** the motorcycle in June 2006, a year and a half *before* Plaintiff allegedly sat next to it in Epstein's garage. (**Exhibit F**.) Again, Plaintiff's assertion contradicts with the 2008 truth that the motorcycle was gone and compels the only logical conclusion that Plaintiff lied.

　　　**G.**　　**Plaintiff's Credibility**

　　　In light of Plaintiff's perjury and intentional spoliation of evidence, Plaintiff lacks credibility and has defrauded this Court. There are numerous examples where Plaintiff has provided contradictory testimony in this case and others as outlined in the illustrative chart at **Exhibit Z**. Defendants ask the Court to consider that chart in reviewing the record evidence filed in this case.

## ARGUMENT AND MEMORANDUM OF LAW

**I.**　　**This Court Possesses Inherent Authority to Dismiss this Action with Prejudice for Fraud on the Court**

　　　This Court possesses inherent authority to control and regulate the proceedings before it, including the authority to sanction litigants for abusive practices. *Vargas v. Peltz*, 901 F. Supp 1572, 1579 (S.D. Fla. 1995); *see also Martin v. Automobili Lamborghini Exclusive, Inc.*, 307 F.3d 1332, 1335 (11th Cir. 2002). Where a party acts in bad faith and continually and flagrantly abuses the judicial process, a court may use its inherent power to impose severe sanctions, including dismissal with prejudice. *Id.* at 1335-36. The power of any court to manage its own affairs, which necessarily includes the authority to impose reasonable and appropriate sanctions on the parties to litigation before it, is deeply rooted in the common law tradition. *Malautea v. Suzuki Motor Co., Ltd.*, 987 F.2d 1536, 1545-46 (11th Cir. 1993), *cert. den.*, 510 U.S. 863, 114 S. Ct. 181, 126 L. Ed. 2d 140 (1993).

　　　Federal courts are additionally empowered to dismiss an action for failing to comply with

the Federal Rules of Civil Procedure and court orders, pursuant to Rule 41(b). *Goforth v. Owens*, 766 F.2d 1533, 1535 (11th Cir. 1985). Federal Rule of Civil Procedure 41(b) provides:

> For failure of the plaintiff to prosecute or comply with these rules or any order of court, a defendant may move for dismissal of an action or of any claim against the defendant. Unless the court in its order for dismissal otherwise specifies, a dismissal under this subdivision ... operates as an adjudication upon the merits.

Thus, a court's power to dismiss an action with prejudice for fraud on the court is derived (1) from its inherent authority to regulate the proceeding before it, and (2) from Federal Rule Civil Procedure 41(b). *Zocaras v. Castro*, 465 F.3d 479, 483 (11th Cir. 2006); *Bassett v. Wal-Mart Stores East, LP*, No. 18-61984-CIV, 2019 WL 4691824, at *2 (S.D. Fla. July 10, 2019).

Defendants recognize that dismissal with prejudice is typically a "sanction of last resort" employed "only in extreme circumstances," but asserts that the serious fraud Plaintiff has perpetrated on this Court - masquerading as a victim - is precisely the extreme circumstance envisioned by the courts. Not only does Plaintiff's fraud harm our system of justice at large, but Plaintiff's false claim undermines true sexual abuse and trafficking victims specifically. *See Zocaras*, 465 F.3d at 484 ("A trial is not a masquerade party...."). While dismissal with prejudice is an extreme sanction, "it is justified in extreme circumstances." *Id.* at 485.

To affirm a dismissal with prejudice, this Court must find "a clear record of ... willful conduct and that lesser sanctions are inadequate to correct such conduct." *Id.* at 483. Lying to this Court with her Complaint and under oath in her deposition on matters that go to the very heart of her claim constitute willful misconduct and no lesser sanctions exist when Plaintiff is, in fact, the one causing damages to others and suffers no damage herself.

### A.   Clear and Convincing Evidence Demonstrates that Plaintiff Consciously Committed Fraud on this Court

A party commits fraud on the court where clear and convincing evidence demonstrates that:

> [A] party has sentiently set in motion some unconscionable scheme calculated to interfere with the judicial system's ability impartially to adjudicate a matter by improperly influencing the trier or unfairly hampering the presentation of the opposing party's claim or defense.

*Vargas v. Peltz*, 901 F. Supp. 1572, 1579 (S.D. Fla. 1995). Fabrication of evidence by a party is a reported example of dismissals being warranted under this definition. *Id.* (citations omitted). While a finding of fraud on the court is necessarily fact-intensive, and District Courts are

18

afforded considerable discretion in these matters, such a finding should be reserved for "only the most egregious misconduct, such as bribery of a judge or members of the jury, or the <u>fabrication of evidence by a party</u>." *Patterson v. Lew*, 265 Fed. Appx. 767, 768 (11th Cir. 2008) (emphasis added). As this Court has recognized, a "party's egregious misconduct *towards the Court* will result in dismissal for fraud on the court." *Bassett v. Wal-Mart Stores E., LP*, No. 18-61984-CIV, 2019 WL 4691824, at *2 (S.D. Fla. July 10, 2019) (emphasis in original).

While "[l]ying under oath is an 'affront to the law itself,'" Plaintiff did far more than commit perjury. *See Bassett*, *supra*, citing *ABF Freight Sys., Inc. v. NLRB*, 510 U.S. 317, 326 (1994) (Kennedy, J., concurring). Rather, she fabricated her entire claim against the Estate.

Dismissal with prejudice is proper when a plaintiff gives false sworn answers in discovery that are "calculated to evade or stymy discovery on issues *central* to her case." *Cox v. Burke*, 706 So. 2d 43, 47 (Fla. 5th DCA 1998) (emphasis added). Courts have distinguished cases where a party's false testimony is *collateral* to the claim or *central* to the claim. *Id.* at 47. Where a party lies about matters pertinent to her own claim, and perpetrates a fraud that permeates the entire proceeding, dismissal of the whole case is proper. *Savino v. Fla. Drive In Theatre Mgmt., Inc.*, 697 So. 2d 1011 (Fla. 4th DCA 1997). Where a plaintiff "lied about matters which went to the <u>heart of his claim</u> on damages," dismissal with prejudice was affirmed. *Id.* at 1012. Repeated fabrications undermine the integrity of a plaintiff's entire action. *Id.* Indeed, trial courts have "the right and obligation to deter fraudulent claims from proceeding in court." *Id.*

Here, Plaintiff not only attempted to defraud the Estate, but she fabricated evidence, including sworn deposition testimony going to the heart of her claim which constitutes fraud on the Court. Central to her claim was that Plaintiff was with Epstein and Maxwell in Florida from January 2008 to May 2008, that Epstein and Maxwell held Plaintiff's now-destroyed passport, and Plaintiff was raped and sexually assaulted by Epstein and Maxwell in early 2008. These allegations have been conclusively established as untrue fabrications. Despite its headline-grabbing concept, Plaintiff was never threatened to be "devoured by the alligators" over a "large body of water" on her way to a Naples hotel with Epstein, Maxwell, and her young son. (D.E. 1, ¶¶ 59-62.)

Plaintiff claimed she was with Epstein and Maxwell in Palm Beach at a time when *neither* Epstein nor Maxwell was in Florida. In fact, Plaintiff has testified that she was in Turkey receiving psychological treatment for the "distress" over losing her job at ███████. Knowing

this and aware of her travel, Plaintiff photocopied select pages purportedly of her passport that appear altered. When the Estate's counsel noted the suspicious pages and inconsistency with Plaintiff's Interrogatory Answers in the ███████ case, the Estate's counsel requested to inspect the original passport. Ten days later, after repeated follow-up requests, Plaintiff's former counsel advised Defendants' counsel that the passport was mysteriously shredded by Plaintiff's son and brother.  As explained above, the son and brother later submitted declarations which Plaintiff's former counsel has expressly disavowed. (**Exhibits J** and **P**.)

This Court can reach only one conclusion: Plaintiff is an opportunistic litigant who read about Epstein's death and decided to bring this fraudulent lawsuit based on her lies. Plaintiff gleaned enough facts about Epstein and Maxwell from the news, including a publicly available October 2005 search warrant that referenced Epstein's motorcycle, to concoct her rape claim. What Plaintiff failed to have in her possession was the truth about Epstein's and Maxwell's separate whereabouts in early 2008 and Epstein's gifting of the motorcycle. Plaintiff banked on the Estate never researching and finding her ███████ case. This constitutes clear and convincing evidence that Plaintiff sentiently set in motion her unconscionable scheme calculated to interfere with the judicial system's ability to impartially adjudicate a matter by fabricating her entire claim.

Consequently, Plaintiff's Complaint created out of whole cloth is barred by her own testimony in the ███████ case and her destruction of crucial evidence. Therefore, dismissal with prejudice is required as a matter of law.

**B.     Plaintiff's Complaint is a Sham Because the Allegations are Palpably or Inherently False, a Plain Fiction**

For almost a century, Florida courts have identified sham pleadings and the courts' "indispensable power" to eliminate them for the protection and maintenance of our judicial system. The Florida Supreme Court recognized:

> A plea is considered 'sham' when it is <u>palpably or inherently false</u>, and from the plain or conceded facts in the case, <u>must have been known to the party interposing it to be untrue</u>. Pleading a matter known by the party to be 'false' for the purpose of delay or other unworthy object, has always been considered a very culpable abuse against justice, and at common law was subject to censure and summary setting aside with costs….

*Rhea v. Hackney*, 157 So. 190, 193 (Fla. 1934) (emphasis added). The rule allowing the striking or dismissal with prejudice of a sham complaint is applied "where the [claim] is shown to be a

plain fiction." *Id.* at 193.

Here, there can be no colorable argument that Plaintiff's allegations are anything but a sham. *Compare Gleman v. MWH Am., Inc.*, 309 So. 3d 681, 685 (Fla. 4th DCA 2021). Plaintiff plainly, clearly, and repeatedly pled the time frame of January 2008 to May 2008. (D.E. 1, ¶ 19.) Plaintiff claimed that she was repeatedly raped and sexually assaulted by Epstein "[f]or a period extending over five months" during this time frame. (D.E. 1, ¶ 23.) Her Complaint is replete with allegations that this is the period during which the core of her claim for damages occurred. (D.E. 1, ¶¶ 64-65.)

Notably, Plaintiff never recanted her Complaint's time frame during her deposition in this matter. Instead, she double-downed on her lies. In her deposition in this case, Plaintiff testified that the events giving rise to her Complaint began in the middle of January 2008. (Ex. C, 9:23-10:6.) Plaintiff tethered herself to this date because she claimed to recall that it was after her birthday which she celebrated on either January 3 or 5, and before Epstein's birthday which was on January 20. (Ex. C, 10:7-18; 16:12-15; 18:22-24; 19:6-10; 134:4-7.) Approximately two weeks later, Plaintiff allegedly drove Epstein and Maxwell to a party in Miami where they all spent the night and she was allegedly raped by an unknown man. (Ex. C, 62:20-21; 63:3-64:2; 242:16-17.) The next day, Plaintiff allegedly met up with Epstein and Maxwell again and drove them to someone's house in Palm Beach where she was raped by someone else. (Ex. C,168:15-169:6.) Both of these alleged rapes, however, occurred at a time when Plaintiff was in Turkey according to her ▮▮▮▮▮▮ testimony.

The record evidence the Estate uncovered confirms that Plaintiff lied about ever meeting Epstein, let alone being raped and sexually assaulted by him and Maxwell. During the ▮▮▮▮▮▮ case deposition, Plaintiff testified under oath that she was treated by a psychologist in Turkey on January 29, February 14 and 15 and May 16, 2008. (Ex. I, 93:15-23; 97:16-22; 100:4-11; 101:7-9; 326:13-17.) Instead of being raped by Epstein in Palm Beach and traveling to Naples with him, Maxwell, and her son, Plaintiff testified in the ▮▮▮▮▮ case that she was suffering from depression during that time after losing her job at ▮▮▮▮▮ and traveled to Turkey to seek treatment. (Ex. I, 94:3-7.) Plaintiff traveled to Turkey on January 28, 2008, and she stayed there for **twenty days**. (Ex. I, 94:3-11; 98:9.) This timeline means Plaintiff returned to Florida on or about February 17, 2008, only to return to Turkey for additional treatment the first week of May 2008 and staying for approximately ten days. (Ex. I, 94:12-95:20.)

The ████ case evidence contradicts Plaintiff's Complaint's allegations that she affirmed in her testimony in this case that Epstein raped her in Palm Beach in January 2008, that Epstein had possession of her passport from November 2007 through May 2008, and she was unable to leave the country. (D.E. 1, ¶¶ 47, 48, 102, 103; Ex. C, 110:2-14.) These claims advanced to support her rape claim simply are patently false. Importantly, Plaintiff's travel to Turkey in January 2008 through May 2008 was at a time when Epstein and Maxwell were allegedly raping and sex trafficking her and forcing her to have vaginal reconstructive surgery. (D.E. 1, ¶¶ 19, 51, 52, 58, 63, 65, 71, 72.)

Of course, an unaltered passport would have matched Plaintiff's testimony in the ████ case and further demonstrated Plaintiff's presence in Turkey during the times when she claims she was "captured" and raped by Epstein and Maxwell, while they held her passport. Instead of fabricating false evidence, Plaintiff intentionally destroyed potentially accurate evidence by shredding her passport after producing the altered copy.

When this Court reviews Plaintiff's Complaint and deposition in this matter alongside her testimony in the ████ case, only one conclusion results: Plaintiff's Complaint is a sham and fraud on this Court. Her Complaint was palpably or inherently false and must have been known to Plaintiff to be untrue. Plaintiff surely suffers from a mental condition causing delusion or is a perjurer.

## II.    Dismissal with Prejudice is Further Supported by Plaintiff's Intentional Spoliation of Evidence

While this Court need not proceed further, Plaintiff's undisputed spoliation of her passport bolsters the Estate's request for dismissal with prejudice. Spoliation has been defined as the "intentional destruction of evidence or the significant and meaningful alteration of a document or instrument." *Managed Care Sols., Inc. v. Essent Healthcare, Inc.*, 736 F. Supp. 2d 1317, 1322 (S.D. Fla. 2010).

The movant seeking sanctions based on spoliation must prove that (1) the missing evidence existed; (2) the alleged spoliator had a duty to preserve the missing evidence; and (3) the missing evidence is crucial to the moving party's prima facie case or defense. *Snell v. Ford Motor Co.*, No. 12-23036-CIV, 2014 WL 11822753, at *2 (S.D. Fla. July 31, 2014). A finding of "bad faith" is a prerequisite to a court's imposition of sanctions for spoliation of evidence. *Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1310 (11th Cir. 2009). Once the predicate bad faith is

established, "an adverse inference is drawn from a party's failure to preserve evidence…." *Id.*

If direct evidence of bad faith is unavailable, the movant may establish bad faith through circumstantial evidence. *Managed Care Sols.*, 736 F. Supp. 2d at 1322. The following constitutes circumstantial evidence of bad faith:

> (1) evidence once existed that could fairly be supposed to have been material to the proof or defense of a claim at issue in the case; (2) the spoliating party engaged in an affirmative act causing the evidence to be lost; (3) the spoliating party did so while it knew or should have known of its duty to preserve the evidence; and (4) the affirmative act causing the loss cannot be credibly explained as not involving bad faith by the reason proffered by the spoliator.

*Id.*

Plaintiff's original production on July 9, 2021 of color photocopies of her Turkish passport and U.S. Visa (JD_000001-JD_000031) in an attempt to evidence that she did not travel to Turkey in 2008 raised more questions and provided no answers. (**Exhibit G**.) For starters, the pages produced did not reflect travel in 2008. Worse, three of the pages appear altered with stains and stamps stopping at the inner hinge that did not copy as a Rorschach Inkblot Test would when the book is closed on itself.  In other words, the hinge would create a mirror image effect on the facing page; here, it does not.

Suspecting foul discovery activity, the Estate's counsel asked to inspect the original passport on October 28, 2021. On November 8, 2021, Plaintiff's former counsel advised that Plaintiff's son and brother underscored{destroyed} the passport and provided photographs that Plaintiff took of the passport before it was originally produced. (**Exhibit H**.) Those photos also evidence that the passport appears altered. *Id.*

Plaintiff's passport existed, was clearly relevant to the claims alleged in the Complaint, and Plaintiff had a duty to preserve it. Plaintiff knew or should have known of her duty to preserve the evidence after being asked for it in discovery and purportedly producing photocopies. The act by her son and brother allegedly discarding important papers cannot be credibly explained as not involving bad faith in the context of this lawsuit and the significance of the 2008 passport pages. The original passport, if produced, would disprove Plaintiff's Complaint and testimony in this lawsuit.

Moreover, Plaintiff's former counsel had a duty to inform their client to preserve the passport and Plaintiff had a duty to maintain it. Accordingly, Plaintiff's spoliation of the passport presents an additional basis to dismiss her Complaint with prejudice.

III.    **Rule 12(b)(6) – Dismissal is Required Based on Plaintiff's Failure to State a Claim Upon Which Relief May be Granted**

To survive a motion to dismiss for failure to state a cause of action under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009) (*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The Court must accept a plaintiff's well-pleaded facts as true but need not accept mere legal conclusions. *Demeza v. Hartford Ins. Co. of the Midwest*, No. 8:11-cv-2522, 2012 WL 163818 (M.D. Fla. Jan. 19, 2012). "Plausibility is the key, as the 'well-pled allegations must nudge the claim 'across the line from conceivable to plausible.'" *Jacobs v. Tempur-Pedic Int'l, Inc.*, 626 F.3d 1327, 1333 (11th Cir. 2010) (*quoting Sinaltrainal v. Coca–Cola Co.*, 578 F.3d 1252, 1261 (11th Cir. 2009), in turn *quoting Twombly*, 550 U.S. at 570).

More specifically, the complaint "must be anchored in a bed of facts, not allowed to float freely on a sea of bombast. That is to say, a court assessing a claim's sufficiency has no obligation to take matters on blind faith[] despite the highly deferential reading which [a court] accords a litigant's complaint under Rule 12(b)(6)." *Miranda v. Ponce Fed. Bank*, 948 F.2d 41, 45 (1st Cir. 1991). A plaintiff's obligation to provide the grounds of her entitlement to relief requires more than labels and conclusion, and a formulaic recitation of the elements of a cause of action will not do. *Twombly*, 550 U.S. at 554-55.

Here, Plaintiff's Complaint is unquestionably barred by the applicable statute of limitations. First, the state law claims are time-barred pursuant to Florida Statute scheme. Equitable accrual and tolling do not exist in Florida. As to the TVPA claims, Plaintiff ineffectively alleges that her subjective fear of Epstein should trigger equitable tolling for her untimely Complaint. However, Plaintiff fatally fails to plead that she had no knowledge of her legal right to pursue the TVPA claims. Instead, her Complaint is replete with allegations of her knowledge that Epstein's actions were wrong when allegedly perpetrated on the adult Plaintiff. As a result, the essential element necessary for equitable tolling – a lack of knowledge of facts that compromise Plaintiff's cause of action – were never, and can never, be pled. Therefore, dismissal with prejudice of the TVPA claims is required as a matter of law.

A.    **Plaintiff's Original Jurisdiction Claims are Time-Barred Under the Federal TVPA's Ten-Year Statute of Limitations**

Plaintiff asserts that this Court has original jurisdiction pursuant to 28 U.S.C. § 1331 in

that this action arises under the federal Trafficking Victims Protection Act (TVPA), as reauthorized and amended, 18 U.S.C. §§ 1591-1595. (D.E. 1, ¶ 15.) However, Plaintiff's claims brought specifically under the Civil Remedy section of the TVPA, 18 U.S.C. § 1595, must have been commenced "not later than the later of --…10 years after the cause of action arose; or…10 years after the victim reaches 18 years of age, if the victim was a minor at the time of the alleged offense." This time limitation was not met.

As a threshold point, alleging "outrageous" or "brutal" acts does not toll the accrual of Plaintiff's cause of action. While Defendants in no way concede the fantastical allegations of alligator threats, raping Plaintiff in front of her son, and genitalia mutilation,[9] Plaintiff's advancement of this tenet is unsupported by the law in any event. Plaintiff's allegations, even if remotely tethered to a grain of truth, provide no basis for this Court's creation of a new exception to the tolling of the TVPA.

Accepting Plaintiff's allegations as true, however, for the mere purpose of the timeliness of Plaintiff's claim, Plaintiff was over the age of 18 when the alleged events complained of occurred between January 2008 and May 2008. (D.E. 1, ¶¶ 19, 21.) Therefore, Plaintiff's claims brought pursuant to 18 U.S.C. § 1595(c)(1), Counts I through V, expired in May 2018, ten years after the cause of action arose. This lawsuit was untimely filed three years late, in 2021.

Indeed, Plaintiff's allegation of the first instance of rape makes clear she was aware of the "crime" that she threatened Epstein she would report to the police. (D.E. 1, ¶ 55.) Further, in her General Allegations, Plaintiff concedes her "silence and/or cooperation" for not bringing this action or a criminal one due to her hope of the "possibility of future employment opportunities for the Plaintiff and/or her then husband with the FBI." (D.E. 1, ¶ 68.) In short, there are no allegations that Plaintiff was unaware of her legal right to bring this lawsuit.

Plaintiff acknowledges her untimely filing by attempting to preemptively assert equitable estoppel and equitable tolling in her Complaint. (D.E. 1, ¶¶ 83-89.) However, she fails to assert the requisite allegations to trigger application of these doctrines and thus her claims are time-barred as a matter of law, requiring dismissal with prejudice.

"As the Eleventh Circuit has made clear, dismissal on statute-of-limitations grounds is 'appropriate only if it is apparent from the face of the complaint that the claim is time-barred and

---

[9] It is noteworthy that *none* such salacious and sensational allegations exist in any of Epstein's other victims' nationally reported claims.

only if it appears beyond a doubt that a plaintiff can prove no set of facts that toll the statute.'" *Diaz v. Amezquita*, No. 20-62583-CIV, 2021 WL 2156916, at *4 (S.D. Fla. May 27, 2021), *citing Sec'y of Labor v. Labbe*, 319 Fed. Appx. 761, 764 (11th Cir. 2008).

From the face of Plaintiff's Complaint, her TVPA claims (Counts I through V) must be dismissed with prejudice because they are time-barred pursuant to the federal TVPA as reauthorized and amended. Taking Plaintiff's own allegations as true, her TVPA counts filed in 2021 are time-barred as a matter of law because Plaintiff had until 2018 to file this action pursuant to 18 U.S.C. § 1595. The alleged violations of the TVPA occurred in 2008 and had to be brought within ten years. Plaintiff's failure to do so bars these claims and dismissal is required.

**B.**    **Plaintiff's Supplemental Jurisdiction State Common Law Claims are Time-Barred Under the State of Florida's Four-Year Statute of Limitations**

Substantively, Florida's statute of limitations time bars Plaintiff's state common law tort counts for rape and sexual assault, battery, intentional infliction of emotional distress, negligent infliction of emotional distress, and fraud and misrepresentation. Pursuant to sections 95.11(3)(a), (3)(j), (3)(o), and (7), Florida Statutes, Plaintiff's common law tort claims pled in Counts VI through X had to be commenced within four years of the alleged 2008 events. Accordingly, Plaintiff's Counts VI through X, pursuant to Florida's statute of limitations, expired in May 2012, at the latest.

Federal courts situated in Florida, when deciding issues of state law as opposed to issues of federal law, "must follow the decisions of the Florida Supreme Court and Florida's intermediate appellate courts." *Prime Ins. Syndicate, Inc. v. Sail Tech Distribs., Inc.*, 270 F. Appx. 962, 964 (11th Cir. 2008) ("Instead, because we are required to apply state law, we must follow the decisions of the Florida Supreme Court and Florida's intermediate appellate courts."). *Also see Palm Beach Atl. Coll., Inc. v. First United Fund, Ltd.*, 928 F.2d 1538, 1542 (11th Cir. 1991) (courts must apply the substantive law of the forum state). The statute of limitations governing Plaintiff's common law state tort claims is set forth in section 95.11, Florida Statutes. Therefore, this Court must follow the Florida Supreme Court's most recent holding and application of Florida's statute of limitations – which rejected common law equitable doctrines of accrual and tolling.

The governing provisions of section 95.11(3), Florida Statutes provide:

Actions other than for recovery of real property shall be commenced as follows:

(3)    WITHIN FOUR YEARS.—
    (a)   An action founded on <u>negligence.</u>
* * *
    (j) A legal or equitable action founded on <u>fraud</u>.
* * *
    (o) An action for <u>assault</u>, <u>battery</u>, false arrest, malicious prosecution, malicious interference, false imprisonment, <u>or any other intentional tort</u>, except as provided in subsections (4), (5), and (7).[10]

(7) FOR INTENTIONAL TORTS BASED ON ABUSE. An action founded on alleged abuse, defined in s. 39.01, s. 415.102, or s. 984.03, or incest, as defined in s. 826.04, may be commenced at any time within 7 years after the age of majority, <u>or within 4 years after the injured person leaves the dependency of the abuse, or within 4 years from the time of discovery</u> by the injured party of both the injury and the causal relationship between the injury and the abuse, whichever occurs later.

In an egregious child sexual abuse case, the Florida Supreme Court only last year announced:

> The Legislature has adopted a comprehensive statutory framework to govern limitations periods, including provisions that address when those periods begin to run (accrual) and when they are suspended from running (<u>tolling</u>).

*R.R. v. New Life Cmty. Church of CMA, Inc.*, 303 So. 3d 916, 918 (Fla. 2020) (emphasis added). Although the "focus of [*New Life Community Church of CMA, Inc.*] is accrual," the Florida Supreme Court explained that it was mandated to examine the issue of accrual in the "context of the overall statutory framework governing limitations period" which necessarily included tolling. *Id.* at 921. In doing so, the Florida Supreme Court made clear that appellate courts adopting equitable doctrines for accrual (or tolling) are now rejected. *Id.* at 923. Instead, the Florida Supreme Court concluded that the Second District Court of Appeal was "exactly right" when it held that "protection must come from the tolling provision adopted by the Legislature (section 95.051(1)(i) – not from a judge-made delayed accrual rule." *Id.* The Florida Supreme Court declined a result in which courts rewrite the statute and thereby obliterate the statute. *Id.*

Further driving home its point, the Florida Supreme Court wrote:

> To give proper effect to statutes of limitations, courts must also faithfully apply the accrual and <u>tolling rules prescribed by the Legislature.</u>

---

[10] Subsections (4) and (5) reduce the time to two years and one year, respectively.

27

* * *

> The statutory framework leaves no room for supplemental common law accrual rules. When a 'statute purports to provide a comprehensive treatment of the issue it addresses, judicial lawmaking is implicitly excluded.'

*Id.* (internal citations omitted).

Defendants urge this Court to follow the binding, most recent 2020 Florida Supreme Court precedent of *New Life Community Church of CMA, Inc.*, which clearly denounces equitable doctrines for both accrual <u>and tolling</u> because Florida law has already legislated the tolling issue in section 95.051, Florida Statutes (titled "When limitations tolled."). Under Florida law, the exceptions enumerated by the legislature were neither pled by Plaintiff, nor do they exist here. *See* § 95.051(1)(a)-(i), Fla. Stat. (2021). For instance, there are no alleged exceptions that Epstein could not be timely sued for the common law state tort claims because he was absent from the state, used a false name, concealed himself, or that Plaintiff had been adjudicated incapacitated, etc. *See id.*

Therefore, section 95.051, Florida Statutes (2021) and the 2020 Florida Supreme Court case of *New Life Community Church of CMA, Inc.* compel dismissal with prejudice of Plaintiff's common law state tort claims. Applying Florida's statute of limitations, the common law state tort claims are time-barred pursuant to sections 95.11(3)(a), (3)(j), (3)(o), and (7), Florida Statutes because Counts VI through X had to be commenced within four years of the alleged 2008 events. The right to bring these torts expired in May 2012, at the latest.

Essential to this Court's analysis of section 95.11(3) and (7), Florida Statutes is Plaintiff's concession that she was *not* a minor in 2008, but was "approximately 26 years of age in 2008, when the [alleged] rapes, sexual abuse, physical assault, and mutilation alleged…took place." (D.E. 1, ¶ 21.) Based on this, the assault, battery, negligence, fraud, and intentional tort counts have a four-year Florida statute of limitations which required filing by May 2012. Because this action was filed *nine years later* in 2021, these counts must be dismissed with prejudice pursuant to Florida's statute of limitations.

For the intentional torts based on abuse under subsection (7) (rape and sexual assault, and battery in Counts VI and X), the seven years after the age of majority[11] is inapplicable because Plaintiff was already an adult (26 years old) at the time of the alleged 2008 occurrence. Plaintiff alleged that "her birth year was 1982" and that she was "approximately

26 years of age in 2008, when the rapes, sexual abuse, physical assault and mutilation alleged…took place." (D.E. 1, ¶¶ 20, 21.) Therefore, the alternative time limitations of subsection (7) of either four years after the alleged incidents (four years after 2008), or four years after the time of discovery by Plaintiff of the injury and causal relationship with the abuse (same) again are determined by Plaintiff's own allegations that the conduct ceased in May 2008. As such, the discovery elements required the lawsuit to be commenced no later than May 2012.

Accordingly, all of Plaintiff's claims are time-barred and her Complaint must be dismissed with prejudice on this basis alone.

C.   **Plaintiff Fails to Meet Her Burden to Sufficiently Allege – and Indeed Makes Allegations Which Contradict – the Extraordinary Circumstances Required for Invocation of Equitable Tolling and Estoppel for the TVPA Counts**

Courts use a "variety of terminology" as to whether tolling doctrines are classified as "equitable estoppel" or "equitable tolling." *Pearl v. City of Long Beach*, 296 F.3d 76, 81 (2d Cir. 2002); regardless of Plaintiff's chosen doctrine, both require her to plead extraordinary circumstances not contained in Plaintiff's Complaint. Indeed, and as further explained below, Plaintiff's allegations are entirely incompatible with her invocation of equitable tolling and estoppel. To be clear, equitable estoppel and equitable tolling have two different burdens on Plaintiff: equitable estoppel can apply only in "rare and exceptional circumstances" if Plaintiff pleads that her *reliance* on Epstein's misrepresentations was *reasonable* and Defendants will suffer no prejudice; while equitable tolling requires demonstration of *due diligence* in the pursuit of her claim. *See Pedraza v. United Guar. Corp.*, 114 F. Supp. 2d 1347, 1355 (S.D. Ga. 2000); *Boddie v. Moore*, No. 01-6469-CIV, 2001 WL 37131161, at *1 (S.D. Fla. Nov. 28, 2001). Plaintiff pled neither "reasonable reliance" nor "due diligence" and therefore cannot resurrect her 2008 tort claims from the certainty of the TVPA's statute of limitations.

i.   **Equitable Estoppel Fails Due to a Lack of Reasonable Reliance**

Equitable estoppel is interpreted to mean a bar that prevents a defendant from relying on a statute of limitations defense where the defendant actively took steps to prevent the plaintiff from suing him in time; for example, promising not to plead the statute of limitations. *Pearl*, 296 F.3d at 82. Equitable tolling permits the suspension of a statute of limitations only where the

---

[11] The age of majority is 18 in Florida. *See* § 743.07, Fla. Stat. (2021).

plaintiff "despite all due diligence…is unable to obtain vital information bearing on the existence of [a] claim…[absent] a wrongful—or any—effort by the defendant to prevent the plaintiff from suing." *Id.*

To successfully plead equitable estoppel, "clearly established Florida case law requires the plaintiff to allege that the defendant willfully induced the plaintiff to forego suit until after the limitations period has ended." *In re Chiquita Brands Int'l, Inc. Alien Tort Statute & S'holder Derivative Litig.*, 690 F. Supp. 2d 1296, 1316 (S.D. Fla. 2010), *on reconsideration in part*, No. 08-01916-MD, 2015 WL 71562 (S.D. Fla. Jan. 6, 2015). Where a plaintiff fails to <u>plead</u> that she knew the basis for her suit before the limitations period ended, that she intended to timely file the claim against the defendant, but was "induced" or "prevailed on" by the defendant to forego timely filing such a suit, a plaintiff's claims pursuant to Florida state law are barred by the applicable statute of limitations and equitable estoppel will not toll the time. *Id.*

The allegations in the Complaint fail to trigger equitable estoppel for the TVPA claims because no reasonable reliance was pled or exists. *See Noble v. Yorke*, 490 So. 2d 29, 31 (Fla. 1986) ("equitable estoppel may be applied 'where the representations of one party <u>reasonably</u> lead another to believe in a certain state of affairs and in <u>reliance</u> on such representations the latter changes his position to his detriment.'"); *see also United States v. St. Mary's Ry. W., LLC*, 989 F. Supp. 2d 1357, 1366 (S.D. Ga. 2013) ("Equitable estoppel requires (1) an allegation of misconduct on the part of the party against whom the defense is made and (2) <u>reasonable reliance</u> by the party claiming estoppel on the adversary's conduct (3) in a manner that changed the party's position for the worse."), *citing Basel v. Sec'y of Defense*, 507 Fed. Appx. 873, 876-77 (11th Cir. 2013) (per curiam) (emphasis added).

Similarly, equitable estoppel is unavailing because Plaintiff does not and cannot allege that Epstein "induced or tricked her" into allowing the filing deadline to pass. *See Raziano v. United States*, 999 F.2d 1539, 1541 (11th Cir. 1993). "Once the circumstances inducing reliance are exposed, the plaintiff's obligation to timely file is reimposed." *Keefe v. Bahama Cruise Line, Inc.*, 867 F.2d 1318, 1324 (11th Cir. 1989) (per curiam).

A review of Plaintiff's Complaint reveals *no* allegation of "reasonable reliance." While Plaintiff alleges that Epstein made false representations to Plaintiff "both explicitly and implicitly" that she would be murdered or physically harmed if she reported his conduct, she cursorily claimed she credited the false statements and "genuinely and reasonably <u>feared</u> for the

safety of herself and her family….” (D.E. 1, ¶¶ 27-28.) Nowhere does Plaintiff allege that in reasonable reliance on Epstein's statements, she stalled filing this lawsuit.

### ii.     Equitable Tolling Fails Due to a Lack of Due Diligence

Equitable tolling is justified only in rare and exceptional circumstances. *Boddie v. Moore*, No. 01-6469-CIV, 2001 WL 37131161, at *1 (S.D. Fla. Nov. 28, 2001). Further, equitable tolling is appropriate when a movant untimely files because of extraordinary circumstances that are both beyond his control and unavoidable even with diligence. *Sandvik v. United States*, 177 F.3d 1269, 1271 (11th Cir. 1999). Significantly, “…equitable tolling is appropriate in situations where the defendant misleads the plaintiff, allowing the statutory period to lapse; or when the plaintiff has no reasonable way of discovering the wrong perpetrated against her….” *Cabello v. Fernandez-Larios*, 402 F.3d 1148, 1155 (11th Cir. 2005) (emphasis added). Additionally, in order to apply equitable tolling, “courts usually require some affirmative misconduct, such as deliberate concealment.” *Id.* (citations omitted).

When a plaintiff pleads facts that admit a lack of diligence (or knowledge of a viable claim coupled with inaction), the plaintiff is “not entitled to equitable tolling….” *Villarreal v. R.J. Reynolds Tobacco Co.*, 839 F.3d 958, 972 (11th Cir. 2016) (allegation of futility did not satisfy diligence requirement for equitable tolling). In *Villarreal,* the plaintiff sued for disparate treatment under the Age Discrimination in Employment Act based on a rejected job application of which the plaintiff was unaware until contacted by lawyers over two years later. *Id.* at 961. In his complaint, Villarreal pled that he did nothing during those two years between his application and contact by the lawyer because any inquiry would have been futile. *Id.* at 972. The Eleventh Circuit concluded that the “admitted facts…foreclose a finding of diligence.” *Id.* The court explained: “We have no difficulty concluding, as a matter of law, that a plaintiff who does nothing for two years is not diligent.” *Id.*

Plaintiff completely fails to carry her burden to sufficiently allege “due diligence” and, separately, lack of prejudice to Defendants, both of which are required to trigger equitable tolling. *See S.R. v. U.S.*, 555 F. Supp. 2d 1350, 1358 (S.D. Fla. 2008) (the plaintiff bears the burden of showing circumstances that warrant equitable tolling). Plaintiff must allege due diligence in pursuing her claims to avail herself of equitable tolling. *Id.* Absence of prejudice to Defendants is a factor to be considered in determining whether the doctrine of equitable tolling should apply once a factor that might justify tolling is identified. *Id.*, citing *Baldwin Cnty.*

*Welcome Ctr. v. Brown*, 466 U.S. 147, 152, 104 S. Ct. 1723, 80 L. Ed. 2d 196 (1984). Here, not only did Plaintiff not plead "no prejudice," but the prejudice to Defendants (now the Estate) is undeniable given that the key witness best positioned to rebut Plaintiff's allegations – the alleged tortfeasor himself – passed away while Plaintiff was sitting on her rights.

Moreover, equitable tolling is appropriate when a movant untimely files because of extraordinary circumstances that are both beyond her control and unavoidable even with diligence. *Sandvik v. United States*, 177 F.3d 1269, 1271 (11th Cir. 1999). Significantly, "…equitable tolling is appropriate in situations where the defendant misleads the plaintiff, allowing the statutory period to lapse; or when the plaintiff has no reasonable way of discovering the wrong perpetrated against her…." *Cabello v. Fernandez-Larios*, 402 F.3d 1148, 1155 (11th Cir. 2005) (emphasis added). Additionally, in order to apply equitable tolling, "courts usually require some affirmative misconduct, such as deliberate concealment." *Id.* (citations omitted).

In order to avail herself of this extraordinary remedy, Plaintiff was required to plead that (1) she has been pursuing her rights diligently and (2) some extraordinary circumstance stood in her way. *Youngblood-W. v. Aflac Inc.*, No. 4:18-CV-83 (CDL), 2018 WL 10562576, at *9 (M.D. Ga. Nov. 9, 2018), *aff'd*, 796 Fed. Appx. 985 (11th Cir. 2019). "Plaintiff's Complaint is devoid of any plausible allegations that she acted diligently to pursue her claims and that extraordinary circumstances prevented her from bringing them earlier." *Id.* Where a plaintiff who knows she has been injured does not allege any facts in her complaint demonstrating that she exercised due diligence in pursuing her claims, equitable tolling does not apply. *See id.*

Here, Plaintiff does not allege *one single allegation* of due diligence or extraordinary circumstances that prevented her from bringing her claims for over a decade. Plaintiff never alleged any blameless ignorance of her legal right to pursue Epstein after the May 2008 incident. To the contrary, Plaintiff boldly alleged that after her first incident in early 2008, and despite her "traumatized condition," she threatened to report Epstein's "crime to the police." (D.E. 1, ¶ 55.) Equitable tolling – justified only in rare and exceptional circumstances – is unavailing under Plaintiff's facts. *See Boddie v. Moore*, No. 01-6469-CIV, 2001 WL 37131161, at *1 (S.D. Fla. Nov. 28, 2001). Plaintiff admits she knew of the wrong (alleged rape) perpetrated against her, knew how to report it, and gave no plausible extraordinary circumstance and due diligence that explains her prolonged delay – well more than a decade after the 2008 alleged events and three

years after the TVPA statute of limitations expired. When a plaintiff pleads facts that admit a lack of diligence (or knowledge of a viable claim coupled with inaction), the plaintiff is "not entitled to equitable tolling…." *Villarreal v. R.J. Reynolds Tobacco Co.*, 839 F.3d 958, 972 (11th Cir. 2016) (allegation of futility did not satisfy diligence requirement for equitable tolling).

Even if Plaintiff's Complaint contained properly pled allegations of promptly filing suit, conclusory allegations of "promptness" *after the limitations period passed* do not retroactively convert Plaintiff's delay into due diligence. None of these belated arguments support the requisite allegations that "despite all due diligence…[she was]…unable to obtain vital information bearing on the existence of [a] claim…[absent] a wrongful—or any—effort by the defendant to prevent the plaintiff from suing." *Pearl,* 296 F.3d at 82.

Courts addressing the TVPA cause of action require "due diligence" in order to claim equitable tolling. *Cabello v. Fernandez-Larios*, 402 F.3d 1148, 1156 (11th Cir. 2005) ("plaintiff should act with due diligence and file his or her action in a timely fashion in order for equitable tolling to apply.) The doctrine "gives the plaintiff extra time if he needs it. If he doesn't need it there is no basis for depriving the defendant of the protection of the statute of limitations." *Cada v. Baxter Healthcare Corp.*, 920 F.2d 446, 452-53 (7th Cir. 1990). As the court in *Cada* cogently explained:

> Statutes of limitations are not arbitrary obstacles to the vindication of just claims, and therefore they should not be given a grudging application. They protect important social interests in certainty, accuracy, and repose.

*Id.*

Combine Plaintiff's inconsistent allegations of the "highly publicized" Epstein individual, her 2009 ████ case testimony that she watched television all the time with the undeniable fact that Plaintiff makes zero effort to articulate any due diligence from even the summer of 2020 to her late filing of this lawsuit in March of 2021, this Court must conclude that dismissal is warranted and supported by the law. (Ex. I, 95:25-97:1.) Plaintiff's hollow excuse for not immediately reporting Epstein to the police after she threatened to do so is that Maxwell purportedly called the police instead, following which two individuals Plaintiff believed were police officers threatened to charge Plaintiff with prostitution and deport her son. (D.E. 1, ¶¶ 55-57.) Those allegations advance no explanation for Plaintiff's failure to pursue her rights for the following decade.

Instead, Plaintiff's own allegations establish that she had knowledge of a viable claim

(setting aside the falsity and fraud of the claim) coupled with years of inaction. By her own allegations, Plaintiff admits that she left Epstein's presence in 2008 and never saw or heard from him again. Further, while Plaintiff pleads on the one hand that she "did not regularly follow news or public affairs" from 2008 through 2019 (Epstein's arrest and death in custody), Plaintiff inconsistently pleads that it is "likely" that her allegations here will "be highly publicized given that Epstein and his crimes have been highly publicized all across the nation." (D.E. 1, ¶¶ 7, 29, 89.) Also contradicting Plaintiff's statements is her 2009 testimony in the ██████ case wherein she testified under oath that she watched television all the time. (Ex. I, 95:25-97:1.)

Accordingly, the Complaint and sworn record testimony compel one conclusion: as a matter of law, Plaintiff, who did nothing for 13 years, was not diligent. Neither equitable doctrine applies and Plaintiff's Complaint woefully exhibits this legal deficiency. Instead, Plaintiff's own allegations illustrate: (1) her knowledge in 2008 of her legal right to bring the TVPA and state common law torts claims for the alleged crimes and harm perpetrated against her, (2) no inducement by Epstein to delay Plaintiff from knowing of her rights, and (3) certainly no exceptional circumstances to justify Plaintiff's lack of reasonable diligence in waiting 13 years to file her 2021 lawsuit.

Plaintiff alleges that the false or misleading acts and statements by Epstein or others on his behalf justified her untimeliness of her Complaint based on equitable tolling or equitable estoppel. (D.E. 1 at E, *et seq.*) The core of Plaintiff's allegations for these inapplicable doctrines are based on Plaintiff's subjective fear from May 2008 that caused her inaction until 2021, one year *after* she learned in 2020 of Epstein's death in 2019. (D.E. 1, ¶¶ 83-89.)

Plaintiff fails to allege any reasonably objective basis for her inaction after May 2008. In fact, Plaintiff claims that by May 2008 she no longer saw or spoke with Epstein. Plaintiff does not allege that Epstein continued some period of oppressive, restrictive conduct, or any communication whatsoever that would establish an objective and reasonable fear to preclude Plaintiff from pursuing her legal rights. Significantly, even after Plaintiff admittedly learned in 2020 of Epstein's 2019 death, she waited yet another year – and did nothing – before filing this lawsuit.

Plaintiff's vague allegations of "coercion" and "threats" fail to trigger application of the principle of equitable tolling under the federal statute of limitations. To warrant equitable tolling, a plaintiff must demonstrate "(1) that he [or she] has been pursuing his [or her] rights diligently,

and (2) that some extraordinary circumstance stood in his [or her] way and prevented timely filing." *Lama v. Malik*, 192 F. Supp. 3d 313, 317 (E.D.N.Y. 2016), *citing Lawrence v. Florida*, 549 U.S. 327, 336, 127 S. Ct. 1079, 166 L. Ed. 2d 924 (2007). To qualify for equitable tolling, Plaintiff must establish that extraordinary circumstances prevented her from filing her claim timely, and that she acted with reasonable diligence throughout the period she seeks to toll. *Lama*, 192 F. Supp. 3d at 317 (citations omitted). Plaintiff bears the burden of demonstrating that equitable tolling applies. *Id.* (citation omitted).

To show fear of retaliation sufficient to toll a limitations period, "there must be threats or intimidation against each plaintiff[,] … the conduct must occur within the limitations period, and the plaintiff must bring suit within a reasonable period of time after the conduct ceases." *Geiss v. Weinstein Co. Holdings LLC*, 383 F. Supp. 3d 156, 174-75 (S.D.N.Y. 2019). Allowing Plaintiff to invoke equitable estoppel where the uncontroverted facts demonstrate she received no threats during (and beyond) the entire limitations' period "would significantly expand our equitable-estoppel doctrine without a limiting principle" by "allow[ing] retaliatory threats to indefinitely extend the time to sue." *Vergara v. City of Chi.*, 939 F.3d 882, 887 (7th Cir. 2019). "[T]he protection offered by equitable estoppel ends when 'the circumstance giving rise to the estoppel is removed.'" *Id.* ("The problem with the plaintiffs' argument is readily apparent: They contend that the officers' threats, which stopped two weeks after the alleged constitutional violations, tolled the limitations period for the next three and a half years.") (citing *Shropshear v. Corp. Counsel of Chi.*, 275 F.3d 593, 597-599 (7th Cir. 2001) ("[E]ven under the federal doctrine of equitable estoppel, once the obstacles strewn by the defendant to the plaintiff's suing have been cleared away; then he must act quickly; [Plaintiff] did not.").

Courts agree that statutes of limitations are generally subject to equitable tolling where "necessary to prevent unfairness to a plaintiff who is not at fault for her lateness in filing." *Veltri v. Bldg. Serv. 32B-J Pension Fund*, 393 F.3d 318, 322 (2d Cir. 2004). However, equitable tolling is an "extraordinary measure" only applicable when plaintiff is prevented from filing suit "despite exercising that level of diligence which could <u>reasonably</u> be expected in the circumstances." *Id.*, citing *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 96, 111 S. Ct. 453, 112 L. Ed. 2d 435 (1990).

One example of a preventive act is where a defendant is responsible for concealing the existence of a plaintiff's cause of action. *See Pearl*, 296 F.3d at 80 (City concealed the plaintiff's

causes of action from him with false statements in its official reports, false testimony in two criminal trials, and false deposition testimony). Even with such an example, an estoppel barring a limitations defense will not exist unless there was "active fraudulent concealment" by the wrongdoer. *Id.* at 88. "Federal courts impose a similar requirement." *Id.*

Here, Plaintiff has failed to plead any preventive act by Epstein that thwarted Plaintiff's threshold *knowledge* of facts that she had a claim to pursue. Without such, Plaintiff's level of diligence reasonably expected is lacking to warrant the "extraordinary measure" of tolling. Specifically, Plaintiff never alleged that she did not *know* she had a claim against Epstein and that Epstein prevented her – an adult – from consulting with counsel, from reading the newspaper or internet, or taking any other action to falsely conceal Plaintiff's legal right to bring an action under the state common law tort claims or the TVPA. Beyond the alleged five months in early 2008 through 2021, Plaintiff had the freedom in the United States of America to move anywhere she chose, talk with whomever she elected, and sue anyone she decided to sue.[12]

In fact, as evidenced by **Composite Exhibit K**, Plaintiff had no impediment to seeking protection for repeat violence against two individuals in June 2008 for events that occurred during February, March and May 2008, the exact time frame of the events alleged in this case. Clearly, Plaintiff not only knew how to seek protection, but was capable of doing so. She also filed a wrongful discrimination claim against her employer in 2009 even despite her alleged duress of being arrested for a threatened felony. (Ex. L; Ex. I, 99:3-25; 260:8-12; *see also* Ex. M and Ex. A reflecting *seven* actions filed by Plaintiff seeking orders of protection.)

The "false or misleading acts and statements" Plaintiff identified as precluding her from timely filing this lawsuit strain credulity and are not objectively reasonable:

- Epstein possessed power or influence over the FBI, Department of Homeland Security, and law enforcement or governmental authorities;

- Epstein held influence over authorities who would:
    i.   arrest Plaintiff and charge her for prostitution;
    ii.  bring irreparable shame to Plaintiff by asserting she was a prostitute;
    iii. cause Plaintiff's child to be taken from her; and/or
    iv.  have Plaintiff deported.

(D.E. 1, ¶ 81.)

---

[12] Retention of Plaintiff's passport admittedly ended in May 2008. (D.E. 1, ¶¶ 46, 48.)

Plaintiff's above allegations are fantastical and not objectively reasonable. Furthermore, Plaintiff claims that these alleged acts prevented her from filing this lawsuit continued "as long as she believed Epstein was alive." (D.E. 1, ¶ 82.) Therefore, when Plaintiff conceded her knowledge of Epstein's death (as August 10, 2019, learned of in the summer of 2020), Plaintiff's subjective fear of Epstein's FBI and government power admittedly dissipated. (D.E. 1, ¶¶ 13, 86.) This further fails to excuse Plaintiff from her inaction the summer of 2020 until 2021.

For the equitable tolling calculation, the statute of limitations begins to run when Plaintiff either acquires actual knowledge of the facts that compromise her cause of action or should have acquired such knowledge through the exercise of reasonable diligence after being apprised of sufficient facts to place her on notice. *Lama*, 192 F. Supp. 3d at 317-18 (citations omitted). Here, those facts were admittedly known in 2008.

> **D.**     **Plaintiff Fails to Meet Her Burden to Sufficiently Allege Reasonable Diligence in Pursuing Her Claims**

Defendants expect Plaintiff will respond to this Motion by seeking to toll the time from 2012 to 2021 (an additional eleven years) for her common law tort claims and beyond 2018 (an additional three years) for her federal TVPA claims. To do so, Plaintiff carries the burden of satisfying the first prong of equitable tolling. The inquiry turns on access to information to determine if Plaintiff has alleged she was "reasonably diligent" in pursuing her rights. *Lama*, 192 F. Supp. 3d at 318.

In her Complaint, Plaintiff alleges no facts (i.e., extended hospitalization, coma, psychotherapy, memory loss/amnesia, incarceration) that would support any tenable argument for reasonable diligence of why Plaintiff did not pursue any action from 2008 until 2021, let alone 2019 to 2021. Significantly, Epstein's death in the summer of 2019, allegedly learned of by Plaintiff as "summer of 2020," (D.E. 1, ¶¶ 86, 89) was publicly verifiable as August 10, **2019,** both nationally[13] and locally,[14] and would have quelled any alleged fear Plaintiff claimed to have, and certainly ceased Epstein's alleged "coercive and explicit threats" that compelled Plaintiff's silence. Yet, Plaintiff makes zero attempt to plead any reasonable diligence for her delay in filing her Complaint between the summer of 2020, when her alleged abuser's

---

[13] https://www.cnn.com/2019/08/10/us/jeffrey-epstein-death/index.html;
https://www.reuters.com/article/us-people-jeffrey-epstein-autopsy/official-autopsy-concludes-epsteins-death-was-suicide-by-hanging-idUSKCN1V61Y7.
[14] https://www.miamiherald.com/news/state/florida/article236809668.html.

sensational death was "publicized in connection with the [Maxwell] arrest" and her untimely 2021 filing date. (D.E. 1 at ¶ 89.)

Even taking Plaintiff's allegations of subjective fear as true and believing she lived isolated from any media from the summer of 2019 until the summer of 2020 (contrary to her sworn testimony in the ██████ case), the allegations fail at the threshold review because they are not objective ("knew or should have known"). Further, Plaintiff fails to plead any reasonable diligence for the time between the summer of 2020 and her 2021 filing of this lawsuit. *See Malik*, 192 F. Supp. 3d at 317-18. "When equitable tolling applies, the statute of limitations begins to run when 'the plaintiff either acquires actual knowledge of the facts that comprise his cause of action or should have acquired such knowledge through the exercise of reasonable diligence after being apprised of sufficient facts to put him on notice.'" *Id.* (emphasis added).

Like the plaintiff in *Lama*, Plaintiff here failed to allege any lack of "freedom of movement" from 2008 to 2012 (or beyond) and in fact, advanced no allegations of contact whatsoever from Epstein or any person associated with Epstein after 2008. Even the circumstances in *Malik* where the plaintiff spoke "only occasional broken English," "did not socialize outside the [defendant's] family," "did not take trips on her own," "did not have a driver's license, a social security number, bank account or credit card," had no access to legal advice, and was contained in the alleged abuser's home and isolated, did not constitute circumstances so "extraordinary" to justify tolling the statute of limitations. *Lama*, 192 F. Supp. 3d at 319. The plaintiff in *Malik* was able to communicate by phone with her family, free to leave if she wanted to, and moved back to Nepal when she wanted to return. *Id.* Similar to the plaintiff in *Malik*, Plaintiff was "free to come and go" between 2008 and 2012 (and beyond) and has pled no allegation that restricted her freedom from filing this suit under the applicable federal deadline of 2018 or state deadline for the common law torts of 2012.

Also like the Plaintiff at bar, the plaintiff in *Malik* had access to resources of information and assistance to pursue her rights. 192 F. Supp. 3d at 318. Once a plaintiff knows of a legal right, reasonable diligence requires action. Failing to "undertake any effort to inquire further about her rights under the law" when no longer living or with the alleged offender cuts against the argument of reasonable diligence. *Id.*

Hospitalization could potentially serve as extraordinary circumstances sufficient to

"relax" (not remove) the due diligence requirement. *Oluoch v. Orina*, 101 F. Supp. 3d 325, 332 (S.D.N.Y. 2015) (no allegation of extraordinary circumstances, such as hospitalization, that prevented the plaintiff from exercising her service of process options sooner and thus plaintiff denied request for equitable tolling).

## IV.   Plaintiff's Reservation of a "Right" to Seek Punitive Damages Should be Stricken

Rule 12(b)(f) provides this Court with authority to strike from a pleading "any redundant, immaterial, impertinent, or scandalous matter." "[A] motion to strike is the appropriate mechanism to pursue removal of the prayer for ... damages in the Complaint." *Pucci v. Carnival Corp.*, 160 F. Supp. 3d 1329, 1331 (S.D. Fla. 2016). "The purpose of a motion to strike is to clean up the pleadings, remove irrelevant or otherwise confusing materials, and avoid unnecessary forays into immaterial matters." *Blake v. Batmasian*, 318 F.R.D. 698, 700 (S.D. Fla. 2017). The decision to strike a request for damages in a pleading is committed to the district court's broad discretion. *Id.* (*citing Porcelanas Florencia, S.A. v. Caribbean Resort Suppliers, Inc.*, No. 06-22139, 2007 WL 171590, at *1 (S.D. Fla. Jan. 18, 2007)).

Here, Plaintiff acknowledged that Epstein is deceased. (D.E. 1, ¶¶ 10, 13.) In her "Wherefore" clause, Plaintiff pled: "Plaintiff reserves her right to seek punitive damages upon a record showing of entitlement to such damages." (D.E. 1 at p. 29.) This sentence is subject to an order from this Court striking it as immaterial pursuant to Rule 12(b)(f) because by law, Plaintiff is not entitled to punitive damages from an alleged tortfeasor's estate.

"Florida law prohibits recovery of punitive damages from the estate of a wrongdoer who is deceased." *Poindexter v. Zacharzewski*, No. 18-14155-CIV, 2018 WL 6182590 at *3 (S.D. Fla. Nov. 5, 2018) (*citing Lohr v. Byrd*, 522 So. 2d 845 (Fla. 1988) ("[A] decedent's innocent heirs should not be punished when the wrongdoer is unavailable because of death. In so holding, we join the majority of jurisdictions in this country that have considered this issue.")). This would not be the first time that a claim for (or here reservation to claim) punitive damages against Epstein's Estate has been deemed "unavailable as a matter of law. *See Mary Doe v. Indyke*, 457 F. Supp. 3d 278, 284 (S.D.N.Y. 2020); *Jane Doe v. Indyke*, 468 F. Supp. 3d 625, 631 (S.D.N.Y. 2020); *Lisa Doe v. Indyke*, 465 F. Supp. 3d 452, 471-72 (S.D.N.Y. 2020). Accordingly, while Plaintiff has not pled the requisite basis for punitive damages, even the reservation "to seek punitive damages" is inappropriate and subject to this Court's striking.

Punitive damages are precisely that category of allegations which are here immaterial to

this lawsuit in accordance with Federal Rule of Civil Procedure 12(b)(f). Striking Plaintiff's reservation to futuristically seek an unavailable category of damages serves the very purpose of Rule 12(b)(f) by removing irrelevant and immaterial matters from the litigation. *See Blake v. Batmasian*, 318 F.R.D. 698, 700 (S.D. Fla. 2017). Accordingly, while Plaintiff has not pled the requisite basis for punitive damages and portends it to be a case of first impression, her reservation "to seek punitive damages" is unavailing and prohibited by controlling Florida law.

## <u>CONCLUSION</u>

Defendants have a fiduciary duty to investigate all claims against the Estate and protect the Estate's assets against invalid claims. The evidence adduced clearly and convincingly proves that Plaintiff's Complaint perpetrates a fraud on this Court and constitutes a sham. Plaintiff's very story that gives rise to the Complaint, as confirmed through her perjured testimony, is an affront to our system of justice and truth we seek. In addition to her perjury and destruction of evidence, Plaintiff, through her false creation of a victim label, has potentially harmed others and true victims.

Furthermore, assuming arguendo the allegations to be true, and Defendants contend they are not, Plaintiff's claims are time-barred. Accordingly, Defendants also request that the Court dismiss Plaintiff's Complaint with prejudice pursuant to the applicable statutes of limitation, 28 U.S.C. § 1595 and section 95.11, Florida Statutes. Plaintiff failed to timely file her Complaint under the TVPA which precludes this Court's original jurisdiction over the § 1595 claim. As such, this Court should decline its supplemental jurisdiction over the common law torts. Substantively, the common law torts were not timely preserved and had to be commenced no later than 2012. No equitable doctrine breathes life into the untimely TVPA claims because Plaintiff failed to identify any reasonable reliance or due diligence under extraordinary circumstances to justify application estoppel or tolling. Rather, Plaintiff was dilatory in seeking any right to relief and has thus, by her actions, foreclosed the opportunity to seek this Court's jurisdiction.

Accordingly, Defendants respectfully request that the Court dismiss Plaintiff's Complaint with prejudice and award Defendants sanctions, attorneys' fees and costs, and other relief that the Court deems just.

Respectfully submitted on December 21, 2021.

LINK & ROCKENBACH, PA
1555 Palm Beach Lakes Boulevard, Suite 930
West Palm Beach, Florida 33401
(561) 847-4408; (561) 855-2891 [fax]

By: /s/ *Scott J. Link*
    Scott J. Link (FBN 602991)
    Kara Rockenbach Link (FBN 0044903)
    Primary:  Scott@linkrocklaw.com
    Primary:  Kara@linkrocklaw.com
    Secondary:  Tina@linkrocklaw.com
    Secondary:  Troy@linkrocklaw.com

      - and –

Bennet J. Moskowitz, *Pro Hac Vice*
Molly S. DiRago, *Pro Hac Vice*
TROUTMAN PEPPER HAMILTON SANDERS LLP
875 Third Avenue
New York, New York 10022
(212) 704-6087
bennet.moskowitz@troutman.com
molly.dirago@troutman.com
*Counsel for Defendants*

## CERTIFICATE OF SERVICE

I CERTIFY that on December 21, 2021, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.

By: /s/ *Scott J. Link*
    Scott J. Link (FBN 602991)