UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 21-cv-80589-ALTMAN/Matthewman

JANE DOE,

    Plaintiff,

v.

DARREN K. INDYKE and RICHARD D.
KAHN, as Co-Executors of the ESTATE OF
JEFFREY E. EPSTEIN,

    Defendants.
_____/

## DEFENDANTS' RESPONSE TO PLAINTIFF'S MOTION TO AMEND DISCOVERY AND EVIDENCE AND PROVIDE THE PRODUCTION

Defendants Darren K. Indyke and Richard D. Kahn, as Co-Executors of the Estate of Jeffrey E. Epstein, respond to Plaintiff's May 16, 2022 Motion to Amend Discovery of Evidence and Provide the Production (D.E. 74), and state as follows:

### PRELIMINARY STATEMENT

Plaintiff's "Motion" is not a Motion *per se* and seeks no relief but, rather, is a listing of documents which appears she intends to produce. Plaintiff attached some of the identified documents to her Opposition to Defendants' Motion to Dismiss (D.E. 75) ("Plaintiff's Response"). Plaintiff has not produced the other documents to Defendants. In an abundance of caution, should Plaintiff's filing be treated as a Motion, Defendants file this Response.

Defendants respectfully request that the Court strike Plaintiff's "Motion" because discovery is not filed with the Court pursuant to Southern District of Florida Local Rule 26.1. Defendants further ask the Court to deem Plaintiff's discovery disclosures untimely.

As set forth in Defendants' Motion to Dismiss Complaint for Fraud Upon the Court, Spoliation of Evidence, and Failure to State a Claim (D.E. 62) and Defendants' Reply to Plaintiff's Response, filed simultaneously herewith, Plaintiff's claims are time-barred and can be dismissed on that basis alone, making moot the fraud-upon-the-Court issue raised in Defendants' Motion to Dismiss and the discovery issues raised herein.

If the Court denies Defendants' Motion to Dismiss, however, then Defendants respectfully ask the Court to compel Plaintiff to comply with her outstanding discovery obligations and order her to appear for a second day of deposition, as set forth herein.

## INITIAL DISCLOSURES

Federal Rule of Civil Procedure 26(a)(1) requires parties to identify the name, address and telephone number of each individual who is likely to have discoverable information, along with the subject of that information, and to produce copies of all documents and electronically stored information to support the parties' claims and defenses. The parties have a continuing duty to supplement that information.

Plaintiff filed this action in March 2021 when she was represented by two competent, well-respected law firms: Coffey Burlington and Phillips & Paolicelli, LLP. On May 13, 2021, Plaintiff, through counsel, served her Initial Disclosures claiming she had **no documents** to support her claim and identifying six "witnesses" as follows:

1. Plaintiff;
2. Plaintiff's son;
3. Plaintiff's former husband;
4. Ghislaine Maxwell;
5. "Walter" as alleged in paragraph 69 of her Complaint; and
6. An older man identified as a local judge as alleged in paragraph 69 of her Complaint.

**Exhibit A**. Plaintiff failed to disclose the subject matter of these witnesses' knowledge.

2

In July 2021, while she was still represented by counsel, Plaintiff amended her Initial Disclosures to identify three additional purported "witnesses":

1. Paul Thurston;
2. Steve Bing; and
3. Darren K. Indyke.

**Exhibit B**. Plaintiff, again, failed to disclose the subject matter of these witnesses' knowledge.

In July 2021, Plaintiff also made her only document production in this case, consisting of what she purported to be a copy of her original passport (Bates Nos. 1-31); that original passport was later allegedly <u>shredded</u> by her son and brother, following its production. In Plaintiff's Response (D.E. 75), Plaintiff now claims her passport was "<u>lost</u>."

Before Plaintiff's counsel withdrew, Defendants' counsel inquired on multiple occasions if Plaintiff was going to supplement her Initial Disclosures, but no further supplements were provided.

## **PLAINTIFF'S DEPOSITION**[1]

Defendants took Plaintiff's deposition on June 23, 2021, when she was represented by counsel. Plaintiff's deposition testimony contradicts the new story woven into Plaintiff's Response (D.E. 75).

### A. **Plaintiff's Ex-Husband is Not a Crucial Witness**

In Plaintiff's Response (D.E. 75), Plaintiff claims that her ex-husband is a crucial witness and should be heard and asserts that her previous attorneys took his statement, but it was never produced. (D.E. 75, p. 4; D.E. 74, 8(mm).) However, Plaintiff testified under oath that she <u>never told her husband</u> about Epstein or the alleged rapes that form the basis of her claims in this action.

---

[1] Plaintiff's Deposition Transcript was filed under seal with Defendants' Motion to Dismiss. (D.E. 62, Exhibit C.)

3

> Q. Have you ever told your husband that Mr. Epstein raped you?
> A. No, I didn't.

(Plaintiff's Depo., 55:10-12.)

> Q. So you lied to your husband?
> A. I did.
> Q. And didn't tell your husband what happened?
> A. No, I didn't.

(Plaintiff's Depo., 116:13-19.)

It is hard to imagine that Coffey Burlington and Phillips & Paolicelli, LLP took a statement from Plaintiff's ex-husband and found it credible, but nevertheless failed to disclose it.

**B.  Plaintiff's Son Did Not Witness the Alleged Rape**

In Plaintiff's Response (D.E. 75), Plaintiff states: "Epstein Gmax did rape me in front of [my son] ..." (D.E. 75, p. 4.)  However, during her deposition, Plaintiff testified that her son did not witness the alleged rape:

> Q. And you had intercourse with Mr. Epstein with your son watching; is that right?
> A. He was watching TV or he's sleeping.
> Q. So he never saw you have intercourse?
> A. No.
> Q. He did not know you had intercourse with Mr. Epstein?
> A. No.
> Q. Turn to page 11, paragraph 63 of the Complaint, please.  Do you see where it says, "Over a period of several days, Epstein and Maxwell repeatedly raped and sexually abused you all in the presence of your son?" Is that statement not true?
> A. It is true.
> Q. So your son was there watching you be raped and sexually abused?
> A. He was watching and playing games. Epstein bought him a headphone, and he was watching cartoon from the TV.

(Plaintiff's Depo., 149:10-150:6.)

> Q. Did your son have a good time on the Naples trip?
> A. He had good time.

(Plaintiff's Depo., 156:4-6.)

4

Plaintiff now claims that Coffey Burlington and Phillips & Paolicelli, LLP obtained a statement from her son, but never produced it. (D.E. 74, 9(gg)). Again, it is hard to imagine that Plaintiff's well-respected former counsel took a statement from Plaintiff's son and found it credible, but nevertheless failed to disclose it.

C. **Claims of Plaintiff's Ex-Husband's Domestic Violence**

In Plaintiff's Response (D.E. 75), Plaintiff identifies two witnesses (Tiffany and Patricia O'Neil) whom she allegedly stayed with when the domestic violence started with her husband and who knew about the reason for her alleged divorce. (D.E. 75, p. 4; D.E. 74, 7(km).) Plaintiff does not purport that these individuals have any knowledge concerning the events alleged in her Complaint. Furthermore, although Plaintiff's divorce filings indicate that her husband was physically violent with her, Plaintiff testified at her deposition that her statements in those filings **were a lie** and that her husband never physically harmed her:

> Q. Did you allege that your husband cracked your skull open?
> A. No.
> Q. In your divorce that you filed, did you allege that your husband cracked your skull open?
> A. No, never.
> ***
> Q. ... Do you see where it says that your husband's anger problem previously causing serious acts of physical and emotional violence, split open her skull one time against her. In duress, she took her son and surrendered the premises. Her husband still continues to threaten her with physical violence, stating he just wants her dead. Are those true statements?
> A. We had a one-time argue, but no skull open. ... I never tell I had a skull open or anything. I did tell –
> Q. Did your husband tell you he wanted you dead?
> A. No, I didn't tell that.
> Q. Okay. Did your husband threaten you with physical violence?
> A. Not really. He didn't touch me.
> Q. So this entire paragraph that you signed under oath and submitted to the court is a lie?
> A. **It was a lie**.

5

(Plaintiff's Depo., 200:3-8; 200:25-202:2) (emphasis added).

Although Plaintiff refers to statements from these two witnesses, no such statements were produced.

**D.** **Mental Hospital Visit**

After being shown documents during her deposition that indicated Plaintiff was in a mental hospital in January/February 2008 -- at the time when Epstein was allegedly raping her and holding her passport -- Plaintiff vehemently denied the accuracy of those records or that she was <u>ever</u> in a mental hospital:

> Q. Do you see that in Response 19 you listed the same doctors and represented that you spent six days in a mental hospital.
> A. No, I didn't never live in a mental hospital.
> Q. So what your lawyers wrote here in the answers to interrogatories that were filed in federal court are all a lie, and they made it up?
> A. That's made it up, the doctor.
> Q. The lawyers made it up?
> A. I don't know what happened. I did never told I go to the mental hospital.
> Q. Why would your lawyers make up that you were in Turkey in a mental hospital for six days?
> A. I don't know.

(Plaintiff's Depo., 198:17-199:7.)

Plaintiff now admits that she committed perjury during her deposition. Specifically, Plaintiff admits that she <u>was</u> in a mental hospital during relevant times in this case ("Yes, I was wrong. I apply to Turkish medical record, and the record shows I have been in a psychiatrist clinic visitation 2008, and it shows three days visit."). (D.E. 75, p. 6.)

E.    **Plaintiff Did Not Hold a Cosmetology or Barber License**

Plaintiff attached to her Response (D.E. 75) and identified in her discovery Motion (D.E. 74, 4(nn)) a witness statement from Charles Walton, Jr.[2], who claims that he lived two blocks away from a salon where he got his hair cut by Plaintiff.  First, although the statement is dated January 22, 2022, it was just recently disclosed.  More importantly, however, Plaintiff, never held a license to cut hair and she testified at her deposition that she only cut hair privately for her friends when she needed extra cash:

> Q.   Were you working as a hair stylist at the time?
> A.   No. I had few client privately. My own friends. Sometimes I do extra cash.
> Q.   Did you have a license to cut hair?
> A.   No, I didn't.

(Plaintiff's Depo., 19:18-23.)  Mr. Walton's witness statement directly contradicts Plaintiff's own testimony in this case, bringing its credibility into question.

F.    **Plaintiff Never Before Disclosed Any Witnesses to Her Alleged Vaginal Reconstructive Surgery**

Plaintiff attached to her Response (D.E. 75) and identified in her discovery Motion (D.E. 74, 6(kk)) an alleged witness statement of Zeynep Oya Kocaman who purportedly assisted Plaintiff after her alleged vaginal reconstructive surgery.  However, during her deposition, Plaintiff never disclosed that this individual was present.  Further, Plaintiff testified that she told no one about the surgery:

> Q.   Tell me about the surgery, please.
> ***
> Q.   They performed this surgery in the doctor's house?
> A.   Yes.
> Q.   Was there a nurse there?
> A.   No nurse.
> Q.   Just the doctor and the anesthesiologist?

---

[2] The Statement itself appears altered; the first page is double-spaced and the second page is single-spaced.

> A. Yes.
> Q. Was the anesthesiologist a man?
> A. He was a man.

(Plaintiff's Depo. 182:21-183:4; *also see* 180:24-184:10.)

> Q. Did you tell your husband that you had vaginal reconstructive surgery?
> A. No, I didn't.
> Q. **Did you tell anybody**?
> A. **No, I didn't**.

(Plaintiff's Depo. 185:12-16) (emphasis added).

In Plaintiff's Response (D.E. 75) and Ms. Kocaman's "statement" attached thereto, allegations are also raised about Epstein forcing Plaintiff to eat a "mushroom" cake that made her head "enormously significant bigger" and made her lose control. (D.E. 75, p. 3.) Although Plaintiff was questioned extensively during her deposition about her interactions with Epstein, she never mentioned such a strange, far-fetched story.

### G. The Alleged Photographs

During her deposition, Plaintiff testified that photographs existed of her with Epstein, but claimed that she took the photographs to Turkey:

> Q. Ma'am, do you have a photo in your possession of you with Mr. Epstein?
> A. Maybe, yes.
> Q. And where would this photo be?
> A. In Turkey
> Q. When did you take the photo to Turkey?
> A. 2011.
> Q. Why did you take the photo of you and Mr. Epstein to Turkey in 2011.
> A. I was writing a book.

(Plaintiff's Depo., 42:7-16.)

In Plaintiff's Response (D.E. 75), however, Plaintiff now claims that her newly identified witness, Zeynep Oya Kocaman, took possession of Epstein's memory card and digital camera

8

that contained photographs of Plaintiff. Ms. Kocaman's "statement" insinuates further that Plaintiff thought she was trying to blackmail her and share the photographs with her ex-husband. This story was never told before. Furthermore, none of the photographs have been produced to Defendants and the photographs attached to Plaintiff's Response (D.E. 75) are illegible.

**PLAINTIFF'S NEWLY IDENTIFIED WITNESSES AND DOCUMENTS**

In Plaintiff's Response (D.E. 75) and discovery Motion (D.E. 74), Plaintiff identifies documents, photographs, witness statements, and seven alleged "witnesses" who were not disclosed while she was represented by two well-respected and competent law firms:

1. Zeynep Oya Kocaman;
2. Charles Foster Walton, Jr.;
3. Tiffany O'Neil;
4. Patricia O'Neil;
5. Carmen;
6. Kemal Gundogdu; and
7. Dr. Kanar.[3]

All of this information was "obtained" after Defendants brought Plaintiff's perjury to the Court's attention and Plaintiff's lawyers withdrew from the case. Plaintiff has further woven new allegations and stories into Plaintiff's Response (D.E. 75) that were never raised when she was represented by counsel.

Because Plaintiff did not previously disclose her "witnesses", the Court should not rely on their non-sworn witness statements in ruling on Defendants' Motion to Dismiss for Fraud Upon the Court.

> If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a

---

[3] To the extent Plaintiff is referring to Dr. Mickey Karram, then Plaintiff's former counsel advised that Dr. Karram's report was provided for mediation purposes and that he was not named as a testifying expert. Therefore, Plaintiff's former counsel would not agree to produce Dr. Karram for deposition.

9

>hearing, or at a trial, unless the failure was **substantially justified or is harmless.** …

Fed. R. Civ. P. 37(c)(1) (emphasis added).

Nevertheless, Federal Rule of Civil Procedure 26(a)(1) requires that the address, telephone number, and substance of knowledge of each individual likely to have discoverable information be provided. Plaintiff failed to disclose any of this most basic information.

### DEFENDANTS' DISCOVERY REQUESTS

On October 29, 2021, when Plaintiff was represented by two law firms, Defendants served their First Set of Interrogatories and First Request for Production upon Plaintiff. According to the Federal Rules of Civil Procedure, Plaintiff's responses were due on or before November 29, 2021. However, Plaintiff disregarded her discovery obligations and failed to respond to Defendants' discovery requests or seek an enlargement of time to do so.

On December 8, 2021, Plaintiff's counsel sought to withdraw from the case. (D.E. 52.) The Court granted that request on December 13, 2021. (D.E. 60.) The Court also stayed the case and terminated all deadlines to allow Plaintiff time to obtain new counsel. *Id.*

On January 19, 2022, Plaintiff sought an extension of time to obtain new counsel and consented to proceed *pro se*. (D.E. 64, 65.) The Court granted Plaintiff's extension request and granted Plaintiff until February 28, 2022, to either have her new counsel file an appearance or to file a notice that she intended to proceed *pro se*. (D.E. 68.) On February 4, 2022, Plaintiff filed a second consent to proceed *pro se*. (D.E. 70.) In addition, on February 22, 2022, Plaintiff filed a Motion seeking an extension of time to review the case and to proceed *pro se*. (D.E. 71.)

On March 2, 2022, Defendants served Plaintiff with their First Request for Admissions (**Exhibit C**)[4], Updated First Set of Interrogatories (**Exhibit D**), and Updated First Request for Production (**Exhibit E**). Plaintiff's responses were due on or before **April 1, 2022**. Again, Plaintiff disregarded her discovery obligations and failed to respond to the discovery or seek an enlargement of time to do so.

A.      **Defendants' Requests for Admissions are Deemed Admitted**

Pursuant to Federal Rule of Civil Procedure 36(a)(3), a matter is admitted unless, within 30 days after being served, the party to whom the request is served serves on the requesting party a written answer or objection. Because Plaintiff failed to respond to Defendants' Request for Admissions within the timeframe allowed, the requests are deemed admitted.

B.      **Defendants' Updated Interrogatories and Request for Productions**

Should the Court not dismiss Plaintiff's Complaint, Defendants respectfully request that Plaintiff be compelled to serve written responses to Defendants' Updated Interrogatories and Request for Production of Documents and produce the requested documents. Furthermore, Plaintiff should be compelled to produce the documents identified in her discovery "Motion" that she has not produced to Defendants, specifically items Nos. 1, 2, 5, 7, 8, 9, 10, 14, 15, and 16.

In addition, the photographs attached to Plaintiff's Response (D.E. 75) (Nos. 11(RR), 12(SS), and 13(km)) are not legible. Defendants request that the Court order Plaintiff to produce the photographs in a native digital format and allow inspection by Defendants' forensic expert of the original memory card and digital camera referenced in Plaintiff's Response. (D.E. 75.)

---

[4] Because the exhibits to Defendants' Requests for Admission contain Plaintiff's personal, identifying information, Defendants do not attach them here; Defendants served them on Plaintiff with the original Requests.

## CONCLUSION

Should the Court not dismiss Plaintiff's claims, Defendants respectfully ask the Court to (1) order Plaintiff to appear for a second, in-person deposition at the law firm of Link & Rockenbach, PA within the next sixty days; (2) deem admitted Defendants' March 2, 2022, Requests for Admission to Plaintiff; (3) compel Plaintiff to update her Initial Disclosures and include the names, addresses, telephone numbers and basis of knowledge of all witnesses within the next thirty days; (4) compel Plaintiff to serve written responses to Defendants' Updated First Set of Interrogatories and Updated First Request for Production; (5) compel Plaintiff to produce documents in response to Defendants' Updated First Request for Production, including all documents identified in Plaintiff's Motion and the native digital version of the photographs attached to Plaintiff's Motion, within the next thirty days; (6) compel Plaintiff to make the memory card and digital camera available for inspection by Defendants' forensic expert within the next fifteen days; and (7) for other and further relief that this Court deems just and proper.

Respectfully submitted on May 20, 2022.

> LINK & ROCKENBACH, PA
> 1555 Palm Beach Lakes Boulevard, Suite 930
> West Palm Beach, Florida 33401
> (561) 847-4408; (561) 855-2891 [fax]
>
> By: /s/ *Scott J. Link*
>   Scott J. Link (FBN 602991)
>   Kara Rockenbach Link (FBN 0044903)
>   Primary:  Scott@linkrocklaw.com
>   Primary:  Kara@linkrocklaw.com
>   Secondary:  Tina@linkrocklaw.com
>
>   - and –

        Bennet J. Moskowitz, *Pro Hac Vice*
        TROUTMAN PEPPER HAMILTON SANDERS LLP
        875 Third Avenue
        New York, New York 10022
        (212) 704-6087
        bennet.moskowitz@troutman.com
        *Counsel for Defendants*

## **CERTIFICATE OF SERVICE**

  I CERTIFY that on May 20, 2022, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF which will serve the document on all counsel and parties, including Plaintiff, proceeding *pro se*, at ummuhan2022@yahoo.com.

        By: /s/ *Scott J. Link*
          Scott J. Link (FBN 602991)